[No. 6031–1–II.   Division Two.   December 5, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNY BENNETT, *Appellant.*

*Peter Kram,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

REED, J.—The defendant Johnny Bennett appeals his conviction of two counts of statutory rape in the third degree.

At defendant's jury trial the element of the offense at issue under the statute, RCW 9A.44.090(1),[1] was whether the defendant had sexual intercourse with the two girls as charged in the information. The two alleged victims testified on this issue. In addition, the trial court permitted the State to call two other young girls who testified regarding the defendant's contacts with them. The defendant assigns error to the court's ruling which let in the testimony of the two other girls, as well as to the refusal of his proposed jury instruction on the defense that he reasonably believed the alleged victims to be older based on their declarations as to age. Finding no error, we affirm.

The victim in count 1 (victim 1) was 15 years old at the time she met the defendant. She had run away from home and was living with a "friend" who introduced her to the defendant. In November 1980 she went to live with the defendant in his downtown Tacoma apartment. According to victim 1, a deal was made that Bennett would give her shelter, clothing and money in exchange for sexual favors. Victim 1 testified that she stayed about 4 days at defendant's apartment and had sexual intercourse with him several times. In addition to being a runaway, victim 1 was a juvenile offender and had attended school only to the

---

[1]RCW 9A.44.090(1) provides:

"Statutory rape in the third degree. (1) A person over eighteen years of age is guilty of statutory rape in the third degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is fourteen years of age or older but less than sixteen years old."

eighth grade.

The victim in count 2 (victim 2) was also a runaway at the time she met the defendant. She was 14 years old. Victim 2 testified that Bennett came by one day in February 1981 when she was hanging around in downtown Tacoma and asked her over to his apartment. She went. While there he asked her to stay with him, saying that he would give her food, clothes and medical care. She later found out she must have sexual intercourse with him as the price. According to victim 2, she had sexual intercourse with him twice before leaving in the middle of the second night. Victim 2, like victim 1, had dropped out of school after the eighth grade and had been detained by the authorities on several occasions although she was never convicted of a juvenile offense.

Over the defendant's objection, the State called in its direct case two other young girls, witness A and witness B. Witness A testified that she lived with the defendant for about 3 weeks in April and May 1981. She was then 16 years old and had run away from home. Her testimony was that defendant offered to give her food and shelter in exchange for sexual favors. She engaged in sexual intercourse with him on several occasions. Witness A had also been in trouble with the juvenile authorities.

Witness B testified that she met the defendant in 1979 when she was 14 years old. She was in downtown Tacoma on Pacific Avenue at an entertainment center when Bennett came up and talked to her. According to witness B, she went to his apartment several times and each time Bennett offered to give her money in exchange for sexual favors. Unlike the others, she never accepted the offer. Although witness B had run away from home in the past, at the time she met Bennett she was living with her 19-year-old sister. Witness B, too, had been in trouble with the law but was never charged with an offense.

The defendant took the stand in his own behalf. He denied having sexual intercourse with victim 2 but stated he was "not sure" about victim 1. He did not deny knowing

all four girls.

The jury found the defendant guilty on both counts. He appeals.

■ The defendant first contends that the trial court abused its discretion by allowing witnesses A and B to testify. The admissibility of evidence of other similar acts by the defendant is governed by ER 404(b).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The evidence must be relevant, that is, it must make the existence of a fact which is of consequence to the determination of the action more or less probable. ER 401; ER 402. Even if relevant, the evidence may be excluded in the trial court's discretion if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. When this 2–part test is met, evidence of other similar acts may be admitted. Our Supreme Court recently emphasized the importance of a thorough analysis of "similar acts" evidence in sex cases.

> A careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest.

*State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982). However, contrary to Bennett's assertion, *Saltarelli* does not mandate exclusion of this type of evidence in all sex cases.

We first consider relevance. The State presented the testimony of witnesses A and B to show the defendant's plan, one of the permitted uses in ER 404(b). The only element of statutory rape in the third degree at issue was the fact of sexual intercourse with the alleged victims. If the existence of the plan makes it more probable that the defendant had

sexual intercourse with victims 1 and 2, then the first step toward admissibility is established. Under the common scheme or plan exception, as it was known to the common law, the other similar acts must indicate, by common features, a scheme or plan which tends to show that the scheme or plan was carried out by doing the act charged. 2 J. Wigmore, *Evidence* § 357, at 334 (rev. 1979).

The features common to all four girls and their relationships to Bennett are numerous. They were teenagers between the ages of 14 and 16, school dropouts and runaways. They had been in trouble with the juvenile authorities. Each young girl either went to defendant's apartment because she was introduced by a "friend" or picked up in downtown Tacoma by Bennett. The offer to each was the same: food, shelter or money in exchange for sexual favors. According to victims 1 and 2 and witness A, the offer was accepted and the deal carried out. The incidents with the four girls occurred at a relatively close proximity in time: witness B, 1979; victim 1, November 1980; victim 2, February 1981; and witness A, April and May 1981. The similar acts evidence of witnesses A and B shows that defendant had a plan of approaching vulnerable, teenage runaways and enticing them to his apartment by promises of food and shelter. He would then exact his price if they agreed to stay. Demonstration of this plan makes it more probable that sexual intercourse occurred with victims 1 and 2. The testimony was relevant.

We next consider whether the probative value of the evidence was outweighed by the danger of unfair prejudice. This balance is a matter within the sound discretion of the trial court. ER 403; *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950). Judicial discretion has not been abused unless the reviewing court can find that no reasonable person would take the view adopted by the trial court. *State v. Huelett*, 92 Wn.2d 967, 603 P.2d 1258 (1979). In doubtful cases the scale should be tipped in favor of the defendant and exclusion of the evidence. *State v. Goebel, supra; see also State v. Saltarelli, supra.* The plan evidence was

highly probative on the only issue in the case: sexual intercourse. It was also an essential part of the State's case. The credibility of victims 1 and 2, which the trial court judged on a firsthand basis, could easily be seen as uncertain in view of their past histories. On the other hand, the prejudicial effect of the evidence that defendant pursued other teenagers in much the same manner was great. Nevertheless, we cannot say that the trial court abused its discretion by allowing witnesses A and B to testify.[2]

█ The defendant next contends that the trial court erred by refusing his proposed instruction on the defense that at the time of the offense he reasonably believed the alleged victims to be older based on their declarations as to age. The defense is found in RCW 9A.44.030(2):

> In any prosecution under this chapter in which the offense or degree of the offense depends on the victim's age, it is no defense that the perpetrator did not know the victim's age, or that the perpetrator believed the victim to be older, as the case may be: *Provided,* That it is a defense which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed the alleged victim to be older based upon declarations as to age by the alleged victim.

A defendant is entitled to have his theory of the case submitted to the jury if the theory is supported by substantial evidence in the record. *State v. Griffith,* 91 Wn.2d 572, 589 P.2d 799 (1979). The defendant testified that neither girl told him how old she was. Defendant's legal argument is that "declarations" as to age by the victim can consist of her behavior, appearance and general demeanor. We disagree. A reading of RCW 9A.44.030(2) makes it clear that something more positive is intended. Without the proviso, the statute states that it is no defense that a defendant believes the victim to be older. The rather generalized, nonassertive manifestations of appearance, behavior and

---

[2]The defendant did not request a cautionary instruction on the use of the plan evidence. The jury instructions given are not part of our record on appeal.

demeanor are precisely the type of conduct giving rise to such a belief. The proviso then gives protection to the person who, in good faith, acts upon some kind of explicit assertion from the victim.[3] Here, there was no such explicit assertion from either victim; the statutory defense was not available to Bennett. The proposed jury instruction was properly refused.[4]

The defendant's final contention is that RCW 9A.44-.030(2), in the guise of an affirmative defense, unconstitutionally places the burden of disproving an essential element of the crime on the defendant. This argument is based on *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), and cases following it. We need not address this claim because the defense is not available to defendant.

The conviction on both counts is affirmed.

PETRICH, C.J., and PETRIE, J., concur.

---

[3]*Webster's Third New International Dictionary* (1976) defines a declaration as the "act of declaring, proclaiming, or publicly announcing: explicit assertion: formal proclamation".

[4]Because the activities of Bennett's victims clearly were not declarations, we need not speculate on the kinds of assertive, nonverbal, nonwritten conduct which conceivably could qualify under the statute.