[No. 17630-7-I.   Division One.   June 8, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. MARVIN ELLIS STANDIFER, *Appellant*.

---

*Rita J. Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cindy K. Smith, Deputy,* for respondent.

PEKELIS, J.—Marvin Ellis Standifer appeals his conviction for one count of second degree rape and one count of taking a motor vehicle without permission. He contends that he was denied the effective assistance of counsel by his attorney's failure to renew a motion to sever. The State cross–appeals, contending that the trial court erred in setting aside the verdict and ordering a new trial on one other count of second degree rape.

I

Standifer was charged by information with three counts of second degree rape, RCW 9A.44.050(1)(a), and one count of taking a motor vehicle without permission, RCW 9A.56-.070. Counts 1, 3, and 4, second degree rape, involved three separate incidents and three different victims, while count 2, taking a motor vehicle without permission, was closely connected with count 1.

Before trial, defense counsel moved pursuant to CrR 4.4 to sever counts 3 and 4 from each other and from counts 1 and 2. The trial court denied the motion, finding, *inter alia,* that even if each of the rape counts were tried separately, evidence of the other counts would be admissible under ER 404(b).[1] Defense counsel did not renew the motion at trial.

K.M., the complaining witness in counts 1 and 2, testified that she had known Standifer for a little over a year. They had consensual sexual relations on several occasions, but later broke off their relationship. On June 10, 1985, Standifer called K.M. to ask her for a ride the next day. When K.M. arrived to pick him up, Standifer was not yet dressed, so she sat down to wait. Standifer told K.M. that she could not leave the house, and when she got up to leave he locked the door. He dragged her into the bedroom and removed her clothes, although she told him that she did not wish to have sex with him. When she attempted to resist by kicking him, he grabbed her leg, twisted it, and threatened to break it. Eventually she told him to "do it and get it over with," which he did.

Standifer then drove K.M. in her car to an automatic bank teller where he told her to withdraw some money. When her attempt to make a withdrawal was unsuccessful, Standifer took her purse, ran to the car, and told her to get in. She refused, and Standifer drove away. The car was later found abandoned.

Standifer's own testimony differed somewhat from K.M.'s. While he admitted having sexual relations with K.M. on the day in question, he contended that they were consensual. He said that he waited in the car while she went into the bank, but left without her after a few minutes in order to keep an appointment. He admitted that he later abandoned the car.

R.A., the complaining witness in count 3, testified that

---

[1] *See State v. Gatalski,* 40 Wn. App. 601, 607, 699 P.2d 804 (if evidence of other counts would be admissible, then failure to sever is not prejudicial), *review denied,* 104 Wn.2d 1019 (1985).

she had known Standifer for some 2½ years, during which they had consensual sexual relations on at least two occasions. In the early morning hours of December 22, 1984, Standifer went to R.A.'s home and persuaded her to let him sleep in her living room. At that time they had not seen each other for several months. Later, while R.A. was asleep in her bedroom, Standifer entered the room and got into bed with her. When she pushed him away, he began to strangle her. When she resisted further, he struck her several times about the ears. Then he forced her to disrobe and have sexual intercourse with him. The next day R.A. was examined by a physician, who found a ruptured eardrum, as well as bruises on her head and neck.

Standifer testified that on the night in question he went to R.A.'s house and had consensual sexual relations with her. He said that afterward she became angry and began to "badger" him about seeing other women. He said that he pushed her out of his way, but denied having hit her about the ears.

M.F., the complaining witness in count 4, testified that she met Standifer in December 1984. A few days later they met again and had consensual sexual relations. Shortly thereafter, she decided not to see him again. In January 1985, Standifer called M.F. to arrange a meeting. Wishing to recoup the $5 she had loaned him, she agreed to meet him at a local drugstore. When Standifer arrived, he gave M.F. $2, but said that the rest of the money was at his home. After they arrived at his home, Standifer began to pull off M.F.'s sweater. She told him that she did not want to have sex with him, but he would not let her leave. Fearing that he would harm her if she resisted, M.F. gave in and had sexual intercourse with Standifer.

Standifer admitted having consensual sexual relations with M.F. once in December 1984, but denied having intercourse with her on any other occasion.

With respect to the three second degree rape charges, Standifer was found guilty of the lesser included offense of

third degree rape in count 1, guilty as charged in count 3, and not guilty in count 4. He was also found guilty in count 2 of taking a motor vehicle without permission. The next day, the trial judge informed the parties that he had received a letter from one of the jurors who indicated that she maintained a reasonable doubt as to Standifer's guilt in count 1. Standifer thereafter made a motion for a new trial on that count, which was granted. The State appeals from this ruling, while Standifer appeals from his conviction on counts 2 and 3.

## II

Standifer's only contention on appeal is that his motion to sever offenses was meritorious, and that his attorney's failure to renew the motion, thereby waiving severance, deprived him of his constitutional right to the effective assistance of counsel. CrR 4.4(b) provides that a motion to sever offenses shall be granted whenever the court determines that severance will promote a fair determination of the defendant's guilt or innocence as to each offense. CrR 4.4(a)(2) provides that if a defendant's pretrial motion for severance is overruled, then severance is waived unless the motion is renewed either before or at the close of all the evidence.

A claim of ineffective assistance of counsel has two parts. First, the defendant must show that counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). This involves showing that counsel's performance was not "reasonably effective" under "prevailing professional norms." *Strickland,* 466 U.S. at 687–88. Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Where, as in this case, counsel's failure to litigate a motion to sever is the basis of the defendant's claim, showing prejudice entails demonstrating that the motion should have been granted. *See Kimmelman v. Morrison,* ___ U.S. ___, 91 L. Ed. 2d 305, 106

S. Ct. 2574, 2583 (1986). In addition, the defendant must show that there is a "reasonable probability" that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Kimmelman,* 106 S. Ct. at 2583; *Strickland,* 466 U.S. at 694. However, it is unnecessary to address both parts of the *Strickland* test if the defendant makes an inadequate showing as to either part, and if it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, then the court should do so. *Strickland,* 466 U.S. at 697.

The areas of possible prejudice to a defendant from the failure to sever offenses are enumerated in *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968), *vacated in part on other grounds sub nom. Smith v. Washington,* 408 U.S. 934, 33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972):

> (1) [The defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

*Smith,* 74 Wn.2d at 755 (quoting *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964)); *see also State v. Kinsey,* 7 Wn. App. 773, 775, 502 P.2d 470 (1972), *review denied,* 82 Wn.2d 1002 (1973). Standifer concedes that the first of these is not applicable to this case, but contends that the latter two are.

Standifer's contention is not supported by the record. First, in order to guard against the possibility of this type of prejudice, the jury was instructed that it should consider each count separately as if it were a separate trial, and that the verdict on one count should not control the verdict on any other count. *See* WPIC 3.01. Furthermore, given the verdicts rendered in this case, it is evident that this instruction was scrupulously followed since the jury returned a different verdict on each of the three counts of

second degree rape.[2] In light of this outcome, it is sufficiently clear to us that Standifer was not prejudiced by his counsel's failure to renew his motion to sever, *even if* that motion was meritorious. Accordingly, it is unnecessary to consider either the merits of Standifer's motion to sever or whether counsel's performance was deficient. *See Strickland,* 466 U.S. at 697.

## III

In a letter received by the trial judge the day after the verdicts were rendered, one of the jurors indicated that she maintained a reasonable doubt as to Standifer's guilt in count 1. The juror stated that she had tried hard to agree with the other jurors, and that at the time the vote was taken on count 1 she had temporarily managed to overcome her doubts. She further stated that the other jurors had not pressured her, but that she nonetheless felt she had "buckled under" to a sense of "peer pressure" which she herself had created. On the basis of this letter, Standifer made a motion pursuant to CrR 7.6 for a new trial on count 1, which was granted.

CrR 7.6(a) provides that the court may grant a new trial on any one of eight enumerated grounds "when it affirmatively appears that a substantial right of the defendant was materially affected". If none of those grounds exist, then the grant of a new trial would constitute an abuse of discretion as being based on untenable grounds. *State v. Williams,* 96 Wn.2d 215, 222, 634 P.2d 868 (1981). In its written order granting Standifer's motion, the trial court

---

[2]With respect to the effect of this outcome on Standifer's claim of prejudice, we decline to follow the analysis implicit in *State v. Ramirez,* 46 Wn. App. 223, 730 P.2d 98 (1986). In *Ramirez,* the court found that it was error to deny a motion to sever offenses where evidence of one count would not have been admissible in a separate trial on another count. *Ramirez,* 46 Wn. App. at 228; *but cf. State v. Gatalski,* 40 Wn. App. 601, 609 n.6, 699 P.2d 804 (declining to hold or imply that severance is required in every case where evidence of one count would not be admissible in separate trial of other counts), *review denied,* 104 Wn.2d 1019 (1985). The court then concluded that the error required reversal, despite the fact that the jury had acquitted on one of the two counts. *Ramirez,* 46 Wn. App. at 228.

indicated that it was relying on CrR 7.6(a)(2) (misconduct of the prosecution or jury) and CrR 7.6(a)(5) (irregularity in the proceedings of the court, jury or prosecution).[3] The State contends that this was error, because the juror's statements concern her thought processes and therefore inhere in the verdict, and because there was no evidence of misconduct or irregularity.

The cases are all in accord that in ruling on a motion for new trial, the court may not consider testimony about matters which inhere in the verdict. *See, e.g., State v. Crowell*, 92 Wn.2d 143, 146, 594 P.2d 905 (1979); *State v. Hatley*, 41 Wn. App. 789, 793–94, 706 P.2d 1083, *review denied*, 104 Wn.2d 1024 (1985); *State v. Duhaime*, 29 Wn. App. 842, 858, 631 P.2d 964 (1981), *review denied*, 97 Wn.2d 1009 (1982). Evidence concerning a juror's mental processes inheres in the verdict. *Hatley*, 41 Wn. App. at 793; *see also Crowell*, 92 Wn.2d at 146–47; *Duhaime*, 29 Wn. App. at 858. In this case, the evidence upon which Standifer's motion was based concerns nothing more than a juror's mental processes, and therefore should not have been considered. Because there is no evidence of misconduct or irregularity,[4] it was error for the court to grant a new trial.

---

[3]The relevant portions of CrR 7.6(a) are as follows:

"**Grounds for New Trial.** The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:

". . .

"(2) Misconduct of the prosecution or jury;

". . .

"(5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial;"

[4]Standifer argues that the court's failure to poll the jurors was an "irregularity in the proceedings". CrR 6.16(a)(3) provides that "the jury shall be polled at the request of any party or upon the court's own motion." However, nothing in CrR 6.16(a)(3) *requires* the court to poll the jurors if neither party requests it. In the absence of such a request, failure to poll the jurors is not an irregularity.

## IV

The convictions in counts 2 and 3 are affirmed, and the trial court's order setting aside the verdict and granting a new trial in count 1 is reversed. The cause is remanded for resentencing on all three counts.

SCHOLFIELD, C.J., and RINGOLD, J., concur.

Review denied by Supreme Court September 1, 1987.