[No. 18670–1–I.   Division One.   December 14, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN WILLIAM
YORK, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Paul Stern, Deputies,* for respondent.

SWANSON, J.—Brian William York appeals his jury conviction of second degree rape in violation of RCW 9A.44-.050(1)(a). York was charged by an amended information with three counts of second degree rape, one count of attempted second degree rape, and one count of indecent liberties. Count 5, alleging second degree rape, was severed for trial upon the parties' agreement. Upon the denial of York's pretrial motion to sever the remaining counts, trial was held on these four counts, in each of which the alleged victim was a female student at Lynnwood Beauty College (LBC), where York was an instructor.

Count 1, Second Degree Rape. W. testified that at LBC, which she attended because it was the least expensive beauty school, a student responsibility was to launder the towels using the washer and dryer which were near the school's restrooms toward the back of the school. According to W., on about February 20, 1985, she was at the school's front desk when York told her to check the towels. As she was putting the towels into the dryer, York came up behind her, put his arm over her mouth and then her neck, pulled her into the nearby restroom and told her that if she made a sound, he would hurt her. When she reached for the door, and when she tried to scream, York applied more pressure to her neck. Standing behind her with his arm around her neck, York pulled down her pants and underwear and had

vaginal intercourse with her from the rear after locking the restroom door. According to W., a tampon in her vagina was shoved upward and after York left the restroom she spent about 15 minutes trying to retrieve the tampon before going into the student lounge. She did not want anybody to know what had happened because she was afraid of York.

W. first reported the incident to Bob York, Sr., the school's manager. On March 28, 1985, she wrote to the Department of Licensing about the incident and on April 2, 1985, filed a complaint with the police after talking to L. and P., alleged victims in two other counts. She also had a meeting with someone from a sexual assault center and about 20 women from the school. She stopped attending LBC on April 2, 1985.

Count 2, Second Degree Rape. L. testified that she attended LBC because of the free tuition and in return worked on customers at the school. According to her, in February 1985, upon York's request she was checking the towels in the dryer when York came up behind her and shoved her into the restroom, locked the door and pulled at her clothes. When she tried to tell him to stop, he covered her mouth. He said that he had wanted her for a long time. He fondled her breasts and undid and dropped her pants on the floor. Then he turned her around, tossed her on the floor, got on top of her with his pants and underwear down, had sexual intercourse with her and then left the restroom. He first told her not to tell anyone what had happened or she would regret it. What he said scared her so that she did not tell anyone about the incident for about a month to a month and a half. She reported the incident to the police after talking to W. and eventually finished her training at another beauty school.

Count 3, Attempted Second Degree Rape. P. testified that she attended LBC on a scholarship tuition free at the same time that she was completing her last year of high school. According to her, during her first week of beauty school she went out on a date with York and nothing of a

sexual nature occurred. She had no interest in another date with him. On about June 28, 1984, 2 days after she began beauty school, she was doing the towels when York grabbed her, pushed her into the restroom, and closed the door. He tried to pull her shirt off and her pants down. When she tried to scream, he covered her mouth. She grabbed his hands and managed to get away before he did anything more. P. further testified that a number of times York tried to kiss her in the stockroom when she needed supplies. According to P., she told no one about the restroom incident because she is a quiet person who tries to deal with things herself and thought that she could handle it herself. She did not quit school after the incident because she wanted to become a hairdresser. She eventually finished her training at another school.

Count 4, Indecent Liberties. K. testified that she attended LBC because of the free tuition offered. According to her, York would correct a student who was working on a mannequin head by standing behind the student and placing his hands over the student's shoulders to demonstrate. However, once when York corrected what she was doing, he put his hands under her arms and touched her alongside her breasts. She told him to keep his hands off her and walked away. A few months later, he did the same thing and K. pushed him away.

York, who is about 6 feet 5 inches and weighs about 200 pounds, testified that he had consensual sexual intercourse with W. in the school restroom about a dozen times or more and also had sexual intercourse with her in his truck at a secluded location not far from the school. In February 1985, just before announcing his engagement, he told W. that the relationship had to end because he was concerned about losing his job and license, and he claimed that she was very upset. York further testified that he had consensual sexual intercourse with L. in the school restroom on one occasion. York admitted having a date with P. but denied attempting to have sexual intercourse with her in the school restroom.

Upon a defense motion at the close of the State's case, the trial court dismissed the indecent liberties count based upon insufficient evidence of forcible compulsion and the jury was later instructed to disregard totally the evidence presented as to this count. The renewed defense motion to sever the remaining counts was denied at the close of the State's case and again at the close of all the evidence. The jury found York guilty of count 2, second degree rape, but could not agree on the remaining two counts, and York was sentenced accordingly.

The issues presented on appeal are (1) whether the trial court abused its discretion in denying the motion to sever the counts and (2) whether the alleged prosecutorial misconduct denied the appellant a fair trial.

## SEVERANCE

■ Even where two or more offenses properly are joined for trial under CrR 4.3(a), a motion to sever under CrR 4.4(b) raises the issue of prejudice to the defendant from the joinder. *State v. Gatalski,* 40 Wn. App. 601, 606, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985); *State v. Robinson,* 38 Wn. App. 871, 880–82, 691 P.2d 213 (1984), *review denied,* 103 Wn.2d 1015 (1985). The defendant bears the burden of showing that the denial of severance was an abuse of discretion. *State v. Gatalski, supra.*

The justification for a liberal rule on joinder of offenses appears to be the economy of a single trial. The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charges to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must

weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.

*Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964), *quoted in State v. Smith,* 74 Wn.2d 744, 755, 446 P.2d 571 (1968), *vacated in part on other grounds,* 408 U.S. 934 (1972).

■ In *Smith,* 74 Wn.2d at 755–56, the court noted several factors which may offset the prejudice from the joinder.

(1) the strength of the state's evidence on each count, (2) the clarity of defenses to each count, (3) the court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

*State v. Kinsey,* 7 Wn. App. 773, 776, 502 P.2d 470 (1972), *review denied,* 82 Wn.2d 1002 (1973); *accord, State v. Harris,* 36 Wn. App. 746, 750, 677 P.2d 202 (1984).

Here York's defense to the charge involving P. was denial and his defense to the charges involving L. and W. was consent. York was not embarrassed or confounded in presenting his defenses. *See State v. Smith, supra* at 755.

Next, as York notes, absent physical corroborating evidence, the strength of the State's evidence rested largely upon the witnesses' credibility. Although the extent of the prejudice–mitigating effect of the strength of the State's case is not clear since one count was dismissed at the close of the State's case and the jury could not agree on two other counts, the jury could have found L.'s testimony to be credible.

Further, the court instructed the jury that each count was to be decided separately as if it were a separate trial and that the verdict on one count should not control the verdict on any other count. The jury is presumed to follow the court's instructions. *State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983).

Where the defendant claimed prejudice from joinder in (1) the jury's possible use of evidence of one offense to infer a criminal disposition as to other charged crimes and (2) the possible cumulation of the evidence of the charged crimes, a Washington court held that the defendant did not make the requisite showing of prejudice to support a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), since the jury was instructed to consider each count separately and not to let the verdict on one count control the verdict on any other count and it was evident that the jury followed this instruction since a different verdict was returned on each of the three counts of second degree rape. In that case the defense counsel had failed to renew the motion to sever as required by CrR 4.4(a)(2), and the defendant was found guilty of the lesser included offense of third degree rape on count 1, guilty as charged on count 3, and not guilty on count 4. *State v. Standifer,* 48 Wn. App. 121, 124–27, 737 P.2d 1308, *review denied,* 108 Wn.2d 1035 (1987). *But see State v. Ramirez,* 46 Wn. App. 223, 228, 730 P.2d 98 (1986). Under *Standifer,* York has not met his burden of showing prejudice from the joinder since he was convicted of only one count, the jury not having been able to agree on the other two counts submitted to it, so that it is clear that the jury followed the court's instruction to decide each count as if it were a separate trial.[1]

---

[1] While the court in *State v. Standifer,* 48 Wn. App. 121, 127, 737 P.2d 1308, *review denied,* 108 Wn.2d 1035 (1987) stated that it did not need to reach the merits of Standifer's motion to sever, it does not appear that the analysis of prejudice to a defendant in determining a claim of ineffective assistance of counsel based upon the defense counsel's failure to renew a motion to sever the counts is necessarily different from the analysis of prejudice stemming from the failure to sever.

The *Standifer* court stated: "Where, as in this case, counsel's failure to litigate a motion to sever is the basis of the defendant's claim [of ineffective assistance of counsel], showing prejudice entails demonstrating that the motion should have been granted." *Standifer,* at 125.

The State further contends that since severance questions involve considerations of judicial economy from joinder which are not present in a pure ER 404(b) case, *State v. Gatalski, supra* at 609 n.6, to justify joinder it is not necessary that evidence of each count be admissible at separate trials of the other counts, *e.g., State v. Standifer, supra* at 126 n.2; *State v. Gatalski, supra.*[2] *But cf. State v. Ramirez, supra; State v. Harris, supra* at 750. As the State notes, here considerations of judicial economy weigh in favor of joinder since testimony—regarding the school's physical layout and schedule, the students' and instructors' customary behavior, friendly contacts between the defendant and the victims or the lack of such contacts, and P.'s and L.'s reporting of the rape upon learning of the incident involving W.—would otherwise have had to be repeated at separate trials.

Citing *State v. Conley*, 3 Wn. App. 579, 580–81, 476 P.2d 544 (1970), the State further argues that although not necessary for joinder, the admissibility of evidence of one of the joined counts to prove an element of the others will remove any prejudice. The admissibility of evidence of other crimes is governed by ER 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*State v. Terrovona*, 105 Wn.2d 632, 649, 716 P.2d 295 (1986).

■ *State v. Saltarelli*, 98 Wn.2d 358, 362–63, 655 P.2d 697 (1982), which did not involve a severance question, sets forth the analysis that must be employed before evidence of other crimes may be admitted:

---

[2]*Cf. State v. Philips*, 108 Wn.2d 627, 640, 741 P.2d 24 (1987) ("The mere fact that evidence admissible against one defendant would not be admissible against a codefendant if the latter were tried alone does not necessitate severance . . .").

First, the court must identify the *purpose* for which the evidence is to be admitted. Second, the court must determine the *relevancy* of the evidence. In determining relevancy, (1) the purpose for which the evidence is offered "must be of consequence to the outcome of the action", *and* (2) "the evidence must tend to make the existence of the identified fact more . . . probable." Third, after the court has determined relevancy, it must then "balance the probative value against the *prejudicial effect . . .*"

(Citations omitted.) *State v. Smith,* 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (quoting from *State v. Saltarelli, supra,* and adding emphasis). In doubtful cases the balance should be tipped in favor of exclusion of the evidence. *State v. Smith, supra.*

The above analysis must appear on the record, *State v. Smith, supra,* and the trial court's decision on the admissibility of evidence of other crimes will be undisturbed on appeal absent a showing of an abuse of discretion, *State v. Terrovona, supra,* which exists when no reasonable person would take the position adopted by the trial court, *State v. Huelett,* 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

Here in denying the motion to sever the counts, the trial court, acting upon its asserted understanding that severance must be granted if evidence of one count would be inadmissible in a separate trial on another count, weighed on the record the applicable considerations in determining the admissibility of such evidence. From the offer of proof made, the court found that (1) evidence of the other counts would be admissible in a separate trial on each count to show a common scheme or plan, motive, and opportunity, (2) evidence of the alleged rapes of W. and L. would be probative of intent in the attempted rape count and (3) the prejudice did not outweigh the probative value.

York argues that the evidence of the other offenses would have been inadmissible at separate trials in that the prejudice outweighed the probative value since the other offenses did not demonstrate a common scheme or plan and had

limited relevance on the issue of intent in the attempted rape count. We disagree.

Evidence of other crimes is admissible under the common scheme or plan exception as follows:

> The only purpose of showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. Strictly speaking, the scope of this exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the other offense could be said to evidence a pre–existing design, system, plan, or scheme directed toward the doing of the very act charged.

(Citation omitted.) *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952), *quoted in State v. Hieb*, 39 Wn. App. 273, 283, 693 P.2d 145 (1984), *rev'd on other grounds*, 107 Wn.2d 97, 727 P.2d 239 (1986).

A mere "general similarity" between the other offenses and the crime charged "is insufficient to establish a design or plan to commit the charged offense." *State v. Hieb*, *supra; accord, State v. Harris*, *supra* at 751. Rather,

> the other similar acts must indicate, by common features, a scheme or plan which tends to show that the scheme or plan was carried out by doing the act charged.

*State v. Bennett*, 36 Wn. App. 176, 180, 672 P.2d 772 (1983).

In *State v. Bennett*, the court concluded that the challenged testimony of witnesses A and B demonstrated a common scheme or plan and thus was relevant where it found that the other offenses were not too remote, were similar to the crime charged, *i.e.*, statutory rape, and involved victims similar to the two prosecuting witnesses:

> The features common to all four girls and their relationships to Bennett are numerous. They were teenagers between the ages of 14 and 16, school dropouts and runaways. They had been in trouble with the juvenile authorities. Each young girl either went to defendant's apartment because she was introduced by a "friend" or picked up in downtown Tacoma by Bennett. The offer to each was the same: food, shelter or money in exchange

for sexual favors. According to victims 1 and 2 and witness A, the offer was accepted and the deal carried out. The incidents with the four girls occurred at a relatively close proximity in time: witness B, 1979; victim 1, November 1980; victim 2, February 1981; and witness A, April and May 1981. The similar acts evidence of witnesses A and B shows that defendant had a plan of approaching vulnerable, teenage runaways and enticing them to his apartment by promises of food and shelter. He would then exact his price if they agreed to stay. Demonstration of this plan makes it more probable that sexual intercourse occurred with victims 1 and 2. The testimony was relevant.

*State v. Bennett, supra.*

In the instant case, as in *Bennett,* a number of features are common to the three victims in the counts submitted to the jury and to their relation with York. All three were students at Lynnwood Beauty College, where York was one of their instructors, and all three attended this school because it charged the lowest tuition, in L.'s and P.'s cases, no tuition. At the time of the alleged offenses, W. was 17, L. was 19, and P. was 16 years old, and at that time none of the three had graduated from high school (W. quit school after the 11th grade and L., after completing junior high school, and P. was completing her final year of high school while attending beauty school).

In all three incidents, the victims were accosted by York when they were engaged in one of their duties as students, doing or checking on the towel laundry toward the back of the school near the restrooms, in W.'s and L.'s cases upon York's request. In each case York grabbed, pushed or pulled the victim into the restroom near the laundry area to commit or attempt to commit a sexual act by force and silenced the victims when they attempted to scream by covering their mouths or, in W.'s case, by "let[ting] [her] have it in the throat" with his arm around her neck. The incidents involving the women occurred at a relatively close proximity in time: W., February 20, 1985; L., February

1985; and P., June 28, 1984. The evidence of the other similar offenses reveals that York had a plan of accosting vulnerable young students in an area of the school where he, through knowledge of the school's layout, had ascertained that his acts could remain undetected and of having sexual intercourse by physical compulsion. Demonstration of this plan makes it more probable that the acts occurred as charged; thus the evidence is relevant.[3] *See State v. Bennett, supra.*

Moreover, the probative value of the evidence outweighed the potential prejudice. *State v. Smith,* 106 Wn.2d at 776. Evidence of a plan was highly probative on the issue of whether the acts had occurred as charged and was essential to the State's case since the victims' credibility was at issue due to their delay in reporting the incidents and the defendant's suggestion in cross examination that the reporting delay was attributable to the victims' concoction of the accusations as a result of their anger upon York's announcement of his engagement to his present wife. *State v. Bennett, supra* at 180–81. In *State v. Saltarelli, supra* at 363, the court stated that "the prejudice potential of [other] acts is at its highest" in sex cases; nevertheless, "*Saltarelli* does not mandate exclusion of this type of evidence in all sex cases", *State v. Bennett, supra* at 179. Here it cannot be said that the trial court abused its discretion in determining that evidence of the other counts would be admissible at a separate trial on each count.

*State v. Bowen,* 48 Wn. App. 187, 192, 738 P.2d 316 (1987) and *State v. Harris,* 36 Wn. App. at 751, in each of which the court found no common scheme or plan, are distinguishable from the present case in that in *Bowen* and in *Harris,* the other offense or incidents were merely similar in

---

[3]In addition, evidence of the two alleged rapes would be admissible in a separate trial on the attempted rape count on the issue of the intent to rape. *See State v. Saltarelli,* 98 Wn.2d 358, 365, 655 P.2d 697 (1982); *State v. Gatalski,* 40 Wn. App. 601, 608–09, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985).

nature but did not reveal a common scheme or plan to be admissible evidence under this exception.

As for the indecent liberties count, the jury was instructed to disregard entirely the evidence of this count, and it can be presumed that the jury followed the court's instruction. *State v. Grisby, supra.* Thus even if evidence of this count would not have been admissible in trials on the other three counts so that admitting the evidence was error, it was harmless error, particularly since the incidents involving K. were not highly prejudicial so that absent the alleged error, it is not reasonably probable that the trial's outcome would have been materially affected. *State v. Smith,* 106 Wn.2d at 780.

## PROSECUTORIAL MISCONDUCT

York contends that the italicized portion of this excerpt from the deputy prosecutor's closing argument in rebuttal constitutes prosecutorial misconduct:

> [A]lthough I figured that and told you that I expected [the defense counsel] would talk about all the reasons that you should believe Mr. York when he says nothing happened, [she] didn't make mention of the testimony at all. *Perhaps she recognizes that his testimony has no believability.*

York concedes that no objection to the above statement was raised at trial but argues that the statement improperly led the jury to speculate about the defense counsel's failure to comment on York's credibility.

In addressing the question of whether a prosecutor's comments denied the defendant a fair trial, the reviewing court must determine whether the comments are in fact improper and, if so, whether a substantial likelihood exists that the comments affected the jury. *State v. Reed,* 102 Wn.2d 140, 145, 684 P.2d 699 (1984). Reversal is not required if the error could have been obviated by a curative instruction which was not requested. *State v. Martin,* 41 Wn. App. 133, 139–40, 703 P.2d 309, *review denied,* 104 Wn.2d 1016 (1985). The failure to object to a prosecutor's improper remark constitutes a waiver of the error unless

the remark is deemed to be flagrant and ill intentioned and with enduring resulting prejudice that could not have been neutralized by a jury admonition. *State v. Sargent,* 40 Wn. App. 340, 345, 698 P.2d 598 (1985).

It is improper for a prosecutor to express his personal opinion about a witness' credibility in jury argument. *State v. Reed, supra* at 145; *State v. Sargent, supra* at 343–44. Nevertheless, here even if the deputy prosecutor's statement indirectly suggests that the defendant was not a credible witness, it did not give rise to such prejudice that could not have been cured by an appropriate instruction which was not requested. *State v. Sargent, supra* at 345.

The judgment is affirmed.

RINGOLD, A.C.J., and COLE, J. Pro Tem., concur.

Review denied by Supreme Court March 1, 1988.