IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31698-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN LEE SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Steven Lee Smith appeals his conviction for possession of a stolen firearm in violation of RCW 9A.56.310. On appeal, Smith alleges (1) the trial court erred by admitting into evidence the firearm in question because the State failed to prove that the firearm was stolen; (2) the trial court erred when it admitted evidence of other bad acts; and (3) the State's evidence was insufficient to support his conviction for possession of a stolen firearm. We affirm Smith's conviction.

FACTS

The firearm the State of Washington alleged Steven Smith stole is a Hi-Point model 995 9mm rifle. On January 2, 2013, Lieutenant Reggie Bartkowski of the Goldendale Police Department received a report about the Hi-Point stolen rifle. The owner reported that the rifle was stolen from his vehicle on December 24, 2012, while the

vehicle sat parked in the city of Goldendale. The owner did not know the serial number of the rifle, and Lieutenant Bartkowski was unable to garner the serial number from the store where the owner purchased the rifle. Bartkowski entered the owner's description of the 9mm rifle into the department's computer system.

On February 4, 2013, a confidential informant informed Klickitat County Detective Michael Kallio that he or she saw three firearms, including a 9mm rifle, at a home belonging to Steven Smith. Detective Kallio knew Smith to be a convicted felon. Based on the information from the informant, Kallio procured a search warrant for Smith's home. Before executing the search warrant, Detective Kallio learned of the stolen Hi-Point rifle.

On February 5, 2013, law enforcement officers executed the search warrant on Steven Smith's residence. During the execution of the search warrant, officers arrested Smith at his residence. After taking Smith into custody, Detective Michael Kallio read Smith his Miranda warnings. While still at Smith's residence, Smith identified to officers the location of six firearms inside his residence. Smith also informed officers he hid a 9mm Hi-Point rifle in the back of his Dodge Durango.

Following Steven Smith's disclosure, Detective Kallio secured a search warrant for Smith's Durango. Officers found the Hi-Point rifle in a hidden storage compartment in the back of Smith's vehicle. The Hi-Point rifle was the only firearm recovered outside of Smith's residence.

On February 6, 2013, Steven Smith gave Detective Kallio a recorded statement. Smith stated he purchased the Hi-Point rifle in Goldendale from two individuals for $50 and four grams of methamphetamine. The two individuals from whom Smith purchased the Hi-Point rifle then divided the money and methamphetamine between themselves and a third individual.

On February 7, 2013, the Goldendale Police Department closed its case file on the Hi-Point rifle reported stolen January 2.

## PROCEDURE

On February 6, 2013, the State of Washington charged Steven Smith with seven counts of unlawful possession of a firearm, in violation of RCW 9.41.040. These seven charges are not the subject of this appeal. On March 18, 2013, the State amended the information to include possession of a stolen firearm, in violation of RCW 9A.56.310(1). The Hi-Point rifle was the basis of the new charge.

Prior to trial, the State moved in limine to present ER 404(b) evidence of "other acts" of Steven Smith. Clerk's Papers (CP) at 103. The State sought to introduce testimony from Charles Lloyd and Detective Michael Kallio that: (1) Steven Smith attempted to repay a debt by supplying his creditor with firearms; (2) Smith acquired the Hi-Point rifle from two individuals for $50 and four grams of methamphetamine; (3) Smith knew that all guns he previously purchased from one of the sellers were stolen; and (4) one or two days before Smith's arrest, he was in his Durango with Lloyd, the Durango

3

was "armed to the teeth," and Smith told Lloyd that all of the firearms in the vehicle, including the Hi-Point rifle, were stolen.

On April 15, 2013, at the motion in limine hearing, the State posited that the proffered testimony served the purpose of establishing that Steven Smith knew the Hi-Point rifle was stolen, an element of the crime. During the motion hearing, the State explained:

> [W]e want to keep this related to the gun charges. Mr. Lloyd also has said in his interviews that he was involved in dealing drugs for Mr. Smith and various other things that he has testified to, but the state wishes to keep this fairly narrow for the purposes just of the gun charges.
>
> Mr. Smith has admitted to possession of the — of the guns. In fact when he spoke to Det. Kallio he even told him where some of them were. The key issue in this case is Count 8, and that's the possession of the stolen firearm. Mr. Smith is alleging that he had no knowledge that that firearm was stolen.

Report of Proceedings (RP) at 55.

At the hearing, the State clarified that Charles Lloyd would testify that (1) Steven Smith attempted to repay a debt by procuring between 1,000 and 2,000 firearms for the creditor; (2) the individual from whom Smith purchased the Hi-Point rifle had supplied Smith with firearms before, the firearms were stolen, and Smith knew they were stolen; and (3) the night before Smith's arrest, Smith and Lloyd traveled in Smith's Dodge Durango, wherein Smith acknowledged that he possessed stolen firearms in the vehicle, one of which was the Hi-Point rifle. The State argued that the testimony related to Smith's knowledge that the Hi-Point rifle was stolen, an element of count VIII, and was

4

thus proper under ER 404(b). In other words, the State argued that Lloyd's testimony rendered the fact that the rifle was stolen, and Smith knew of its pilfered nature, more likely than not. The State also asserted that testimony concerning the transaction during which Smith obtained the Hi-Point rifle illuminated the circumstances under which he gained possession and further supported the State's burden of proof. The State recognized prejudice to Steven Smith of Charles Lloyd's testimony, but noted the close relevance of the testimony to the elements of the charges. As noted by the State, it would not offer the testimony unless it had some prejudice to Steven Smith. The State specifically remarked that the probative value of the evidence outweighed the prejudice.

Steven Smith objected to the State's offer of testimony on several grounds. First, the hearing was only two days before trial and the State had not provided Smith with a copy of the police report indicating that the Hi-Point rifle found in his possession was stolen. Nor had the State identified the owner of the firearm. Second, Charles Lloyd's potential testimony regarding repayment of a debt with 2,000 firearms is preposterous, let alone, irrelevant, given that law enforcement found only seven firearms in Smith's possession, two of which belonged to others. Third, Smith argued that the prejudicial impact of Lloyd's testimony far exceeded the probative value, since the testimony characterized Smith as a "large scale gun dealer" trafficking in stolen firearms, when the State had not charged Smith with trafficking firearms. RP at 65. Fourth, Smith objected to testimony of the low price that he allegedly paid for the Hi-Point rifle, because the

testimony unfairly portrayed him as a drug dealer, which was also not an issue before the

jury.

After affording extensive argument, the trial court granted the State's motion in

limine because the State intended to use the testimony to establish elements of the crime

of possession of a stolen firearm, not for the purpose of propensity evidence. The trial

court declared on the record:

> THE COURT: Well, the incorrect use of 404(b) is where the state tries to get evidence in front of the jury around the corner, as it were, by insisting that it's relevant and that what they're really trying to do is get propensity evidence in front of the jury. And that's — that's an improper use of 404(b).
>
> The proper use of 404(b) is where the state is attempting to get relevant evidence in front of the jury that are admissible for some other purpose that is a relevant purpose which is not propensity evidence. And I believe that's the case here, and I'm granting the state's motion.
>
> The defendant was attempting to fill a large purchase order. That goes directly and has a nexus with the state's theory of the case that the defendant had in his possession several firearms and there was one stolen — one stolen firearm that he knew was stolen. That he acquired the gun (inaudible) in Count 8 from two individuals — that goes to the defendant's knowledge and the possible inference by the jury that in fact he knew it was stolen.
>
> That the defendant knew all the guns the defendant purchased in the past from at least one of these individuals had been stolen is admitted for the same reason.
>
> This is all through testimony of a witness, obviously, and the jury will make what they want of that. They're going to test Mr. Lloyd's veracity and credibility, and we'll have to let them do that.
>
> The conversation in the car also seems to me to be relevant, more probative than prejudicial, and a proper usage of 404(b) to the extent that it is.

RP at 71-72.

6

On April 17, 2013, the first day of trial, the State informed the trial court that it had recently received the stolen firearm police report, but the report lacked any identifying serial number for the Hi-Point rifle. The court ruled that because of the State's failure to provide the report to Smith, the State could not reference the report during trial. The trial court, however, authorized Lieutenant Reggie Bartkowski to testify about the report based on his personal knowledge. The State agreed to limit Lieutenant Bartkowski's testimony regarding whether the stolen firearm case was open or closed to testifying that the case was closed. The State agreed Bartkowski would not testify as to how he knew the case was closed.

In opening statements, the State of Washington told the jury that Charles Lloyd would testify that Steven Smith and he had a history of dealing drugs together, and that Lloyd sold drugs provided by Smith. Smith objected on the ground that such testimony would exceed the trial court's ruling on the State's motion in limine, and that Lloyd's prospective testimony was prejudicial under ER 404(b). The State posited that testimony from Lloyd regarding his drug dealing with Smith was relevant (1) to assess Lloyd and Smith's relationship, (2) to assess Lloyd's credibility, and (3) because Smith admitted to officers that he traded drugs for one of the guns. The trial court overruled Smith's objection, but did not weigh the prejudicial impact versus its probative value on the record.

7

During trial, Lieutenant Reggie Bartkowski testified that he prepared a report of the stolen Hi-Point rifle on January 2, 2013. Bartkowski also testified that the owner did not know the serial number of the stolen Hi-Point rifle, and that he could not retrieve the serial number from the store where the owner purchased the rifle. Because Bartkowski lacked a serial number, he entered only a description of the gun in the police database. When the State inquired whether the Goldendale Police Department considered the case open, Lieutenant Bartkowski replied negatively. When the State asked Bartkowski when the Goldendale Police Department closed the case, he replied, "It was closed on February 7th. There was a search warrant conducted on February—." RP at 182. At that point, Smith objected to Bartkowski's testimony about the circumstances of closing the case and the trial court sustained the objection.

The State of Washington called Deputy Robert Songer of the Klickitat County Sheriff's Office to testify at trial. Deputy Songer identified the Hi-Point rifle found in Steven Smith's Dodge Durango when officers served the search warrant on Smith's residence on February 5, 2013. The exchange went as follows:

> [STATE]: Deputy, I'm showing you what's now been marked as Exhibit 33. Can you identify this, please?
> [SONGER]: Yes. This is a weapon that was in the photo in the trunk of the vehicle — in the hidden compartment (inaudible) of the vehicle.
> [STATE]: We're going to discuss this a little but [sic] further but at this point the state offers Exhibit 33.
> [LANZ]: No objection.
> THE COURT: 33's admitted.

8

> [STATE]: — talk about this a little bit. What is it?
> [SONGER]: It's a 9-mm. pistol round, but it's a 9-mm. rifle.

RP at 235.

Deputy Robert Songer testified that he is not a firearms expert, but he regularly handles firearms as a law enforcement officer, has been around firearms his entire life, attends gun shows, and frequents gun shops. Deputy Songer testified that the Hi-Point rifle found in Smith's possession was the only Hi-Point 9mm rifle he ever saw in Klickitat County outside of a gun show or gun shop.

Following Robert Songer's testimony, the State called Charles Lloyd. Lloyd testified that he had 17 felony convictions, including grand theft, possession of stolen property, and controlled substance violations. Lloyd explained that, after his release from prison in November 2012, he approached Steven Smith, and Smith provided Lloyd drugs to sell. Lloyd testified that he currently faced criminal charges, but he made an agreement with the State to testify in order to reduce his sentence and avoid federal prosecution. Lloyd further testified he faced approximately 15 years of incarceration even under the agreement. Lloyd averred that, if he failed to tell the truth, the State would prosecute him to the fullest extent. Lloyd explained that he spent a significant amount of time at Smith's residence while Lloyd used methamphetamine, and, during this period, he always saw firearms at Smith's residence.

Charles Lloyd further testified at trial that Steven Smith owed a third party

9

approximately $2,400, that Smith offered to supply guns to the third party in order to repay the debt, and that Smith enlisted Lloyd to assist in procuring between 1,000 and 2,000 firearms to repay the debt. Lloyd stated he helped Smith obtain some of the firearms. Lloyd testified that, during the morning of the day prior to Smith's arrest, the two rode together in Smith's Dodge Durango. During this ride, Smith told Lloyd that they were "riding dirty," which Lloyd understood to mean that Smith possessed stolen firearms in the vehicle. After learning of the stolen firearms in the vehicle, Lloyd complained to Smith about the risk of being caught by police while the two possessed firearms. Although Smith reassured Lloyd that police would lack probable cause to search the vehicle, Lloyd insisted that, if police contacted them, Smith should take evasive actions to allow Lloyd to escape.

When the State showed Charles Lloyd a picture of the Hi-Point rifle at trial, Lloyd stated that he saw the rifle both in Smith's residence, and most recently, in Smith's Dodge Durango. Lloyd testified that Smith placed the Hi-Point rifle in the back of the Durango in a closed tool box. According to Lloyd, he was not present when Smith obtained the Hi-Point rifle, but Lloyd testified that Smith told him that he had acquired the Hi-Point rifle for "some dope and a little bit of money" from an individual that Lloyd knew as a felon. RP at 257. Lloyd explained that everybody, from whom Smith and he obtained firearms, stole the firearms. Lloyd further testified of his belief that the Hi-Point rifle was stolen when he and Smith rode together in Smith's Durango less than one day

10

before authorities arrested Smith.

In closing arguments, the State of Washington told the jury that it need not believe beyond a reasonable doubt that the recovered Hi-Point rifle was the firearm reported stolen on Christmas Eve 2012. Instead, although substantial circumstantial evidence showed that the rifle confiscated from Steven Smith's Durango was the same firearm as reported stolen, the State need only prove that the Hi-Point rifle in evidence was a stolen firearm and that Smith knew the firearm was stolen. The State also encouraged the jury to focus on the Hi-Point rifle and ignore whether the other six firearms found in Smith's possession were stolen.

On April 18, 2013, the jury convicted Steven Smith on all eight counts. Smith appeals only the verdict on count VIII, possession of a stolen firearm.

## LAW AND ANALYSIS

Steven Smith's primary argument on appeal is that insufficient evidence supports his conviction for possession of a stolen firearm in violation of RCW 9A.56.310. To this end, Smith contends (1) the trial court erroneously admitted the Hi-Point rifle into evidence, and (2) the court erred by admitting ER 404(b) evidence without weighing, on the record, the evidence's probative value against its prejudicial effect. Since we must exclude any improperly included evidence when judging the sufficiency of the evidence, our discussion of the admission of the Hi-Point rifle and the ER 404(b) evidence precedes an examination of the sufficiency of evidence.

11

*Admissibility of Hi-Point Rifle*

Without an objection, an evidentiary error is not preserved for appeal. *State v. Davis*, 141 Wn.2d 798, 850, 10 P.3d 977 (2000); *State v. Powell*, 126 Wn.2d 244, 256, 893 P.2d 615 (1995). Where, as here, the trial court admitted evidence, a substantial right of the party must be affected *and* there must be "a timely objection or motion to strike . . . stating the specific ground of objection, if the specific ground was not apparent from the context." ER 103(a)(1).

Steven Smith failed to object to the trial court's admission of the Hi-Point rifle. Nevertheless, RAP 2.5(a)(3) permits this court to examine claims of error raised for the first time on appeal if the claimed error concerns manifest error affecting a constitutional right. Steven Smith does not argue a manifest error affecting a constitutional right. Therefore, we decline to address the admissibility of the Hi-Point rifle.

*Admissibility of Evidence of Other Acts*

Steven Smith next contends that the trial court erred, under ER 404(b), when admitting Charles Lloyd's testimony regarding other conduct of Smith. Smith argues that the trial court erroneously admitted testimony that (1) Smith repaid a debt by supplying the creditor with a large number of firearms; (2) Smith previously purchased stolen firearms; (3) Smith knowingly transported stolen firearms in his Dodge Durango; and (4) Smith sold drugs.

Washington's familiar ER 404(b) reads, in relevant part:

12

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A trial court's interpretation of ER 404(b) is a question of law that this court reviews de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). ER 404(b) prohibits evidence of past misdeeds solely to prove a defendant's criminal propensity. *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006). Evidence of prior bad acts is presumed inadmissible, and any doubts as to admissibility are resolved in favor of exclusion. *DeVincentis*, 150 Wn.2d at 17; *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). The question asked here is whether Steven Smith's prior uncharged criminal conduct about which Charles Lloyd testified was relevant to prove something other than propensity.

A. Analysis on record

To admit evidence of other crimes or wrongs under Washington law, the trial court must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged, and (3) weigh the probative value of the evidence against its prejudicial effect. *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995); *State v. Dennison*, 115 Wn.2d 609, 628, 801 P.2d 193 (1990); *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986); *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). Additionally, the party offering

13

No. 31698-0-III
*State v. Smith*

the evidence of prior misconduct has the burden of proving by a preponderance of the evidence that the misconduct actually occurred. *State v. Benn*, 120 Wn.2d 631, 653, 845 P.2d 289 (1993). The Washington Supreme Court explained the policy behind these requirements when it stated:

> We cannot overemphasize the importance of making such a record. Here, as in cases arising under ER 609, the absence of a record precludes effective appellate review. *See State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984). Moreover, a judge who carefully records his reasons for admitting evidence of prior crimes is less likely to err, because the process of weighing the evidence and stating specific reasons for a decision insures a thoughtful consideration of the issue. These reasons, as well as others, led us to conclude in *Jones* that a trial judge errs when he does not enunciate the reasons for his decision.

*State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

Steven Smith contends the trial court failed to conduct an ER 404(b) analysis on the record for four topics covered in Charles Lloyd's trial testimony. Three topics concerned firearms and the fourth topic involved controlled substances. We agree that the trial court's analysis on the record was insufficient. As for the testimony of firearms, the court identified the purpose for which the State sought to introduce the evidence and determined whether the evidence is relevant to prove an element of the crime charged. Nevertheless, the trial court failed to determine on the record whether Steven Smith's acts occurred by a preponderance of the evidence and neglected to weigh the probative value of the evidence against its prejudicial effect. We rule the error to be harmless,

14

nonetheless, with respect to evidence about firearms. We rule the error to be harmful with regard to testimony about drug dealing.

Although a trial court's failure to perform the balancing on the record is erroneous, it is not necessarily reversible error. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 446, 191 P.3d 879 (2008); *State v. Jackson*, 102 Wn.2d 689, 693-94, 689 P.2d 76 (1984). When the trial court issues a ruling clearly agreeing with one of the party's immediately after hearing both parties' arguments concerning the admissibility of the ER 404(b) evidence, our reviewing court may excuse the trial court's lack of explicit findings on the record. *State v. Pirtle*, 127 Wn.2d 628, 650, 904 P.2d 245 (1995); *State v. Stein*, 140 Wn. App. 43, 66, 165 P.3d 16 (2007). If the record shows that the trial court adopted one of the parties' express arguments as to the purpose of the evidence and that party's weighing of probative and prejudicial value, then the trial court's failure to conduct its full analysis on the record is not reversible error. *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009).

The trial court ruled and adopted the State's position immediately after hearing argument on the motion in limine. During the argument, the State reviewed the authenticity of the evidence and the probative value versus the prejudice to Steven Smith of the evidence regarding firearms. The evidence was important, if not critical, for the State to establish Steven Smith's knowledge that the Hi-Point rifle was stolen. Smith did not argue that the testimony of Charles Lloyd was false, only that it was irrelevant and

15

prejudicial. Therefore, we excuse the failure to address two of the factors on the record when considering whether ER 404(b) excluded testimony regarding firearms.

Some of Charles Lloyd's testimony implicated Steven Smith as a drug dealer. Nevertheless, the State did not charge Smith with any drug crime. The trial court's ruling allowing testimony concerning controlled substances did not comport with the requirement that it give thoughtful consideration to the issue and create a record sufficient for appellate review. The State, during its argument in support of the motion in limine, gave scant attention to the relevance and need for testimony of drug sales. The State did not weigh the prejudice of the testimony with its harm to Smith. Unlike the other evidentiary rulings addressed in the motion in limine, the trial court did not provide any insight into the basis for its decision, nor did its ruling follow extensive arguments by both parties. The trial court's failure to weigh the evidence is error under the standards for determining the admissibility of ER 404(b) evidence of other bad acts. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d at 444-45. We later review whether the evidence is otherwise harmless with regard to Steven Smith's conviction.

B. Smith's Knowledge of a Stolen Firearm

Steven Smith contends Charles Lloyd's testimony lacked a legitimate purpose. In response, the State argues that the evidence helped to establish the knowledge element of the crime of possession of a stolen firearm. We addressed this issue in part when determining whether the trial court prepared an adequate record when ruling on the

16

motion in limine. We discuss the issue further now.

ER 404(b) precludes evidence of a defendant's other bad acts to show the defendant's propensity for criminal activity. However, when demonstrated, such evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Powell*, 126 Wn.2d at 258 (quoting ER 404(b)). Normally, evidence used to prove knowledge is only admissible if knowledge is an element of the crime. *State v. Bacotgarcia*, 59 Wn. App. 815, 821, 801 P.2d 993 (1990). This court reviews the trial court's decision to admit evidence for abuse of discretion. *DeVincentis*, 150 Wn.2d at 17.

*State v. Greathouse*, 113 Wn. App. 889, 918-19, 56 P.3d 569 (2002) provides an example of the proper admission of ER 404(b) evidence to establish knowledge. In a theft and trafficking prosecution, Michael Greathouse claimed that the trial court improperly admitted his tax returns, which omitted any record of fuel sales. The State argued that the tax returns showed that the defendant knew that the fuel he sold was stolen. Greathouse maintained that the tax returns were irrelevant for proving the theft and trafficking charges, the returns were inadmissible evidence of other crimes or bad acts because they implied he dodged payment of taxes, and the returns were more prejudicial than probative. This court affirmed the trial court's admission of the tax returns because the returns helped to establish that the defendant knew he did not have permission to obtain or sell the fuel. The court explained that, while the defendant's

failure to pay taxes could indicate a dishonest character, the defendant had already admitted to not paying taxes on the income, and the tax return did not raise any "collateral prejudicial issues . . . that some jurors might find disturbing." *Greathouse*, 113 Wn. App. at 919.

In the present case, RCW 9A.56.310 required the State of Washington to prove beyond a reasonable doubt that Steven Smith had knowledge that the Hi-Point rifle found in his possession was stolen. Proving Smith's knowledge that the Hi-Point rifle was stolen was not only relevant, but essential to the State's case.

Steven Smith denies the relevancy of his car ride conversation with Charles Lloyd, his speaking to Lloyd about the seller of the Hi-Point rifle having previously provided only stolen firearms, and testimony that he acquired firearms to repay a large debt. His contention is similar to the defendant in *Greathouse* arguing that the tax returns were irrelevant to the charged conduct. Analogous to the fashion in which the tax returns indicated defendant's knowledge that the fuel was stolen, Lloyd's testimony established Smith's knowledge that the Hi-Point rifle was stolen.

The jury could have inferred from Charles Lloyd's testimony that Steven Smith was a bad character. Nevertheless, because information of his knowledge that the firearm was stolen was essential to proving the State's case, the trial court did not abuse its discretion by admitting the testimony.

C.  Steven Smith as Drug Dealer

18

As previously ruled, the trial court committed error when failing to conduct the required ER 404(b) analysis for Charles Lloyd's testimony about Steven Smith's selling of controlled substances. Nevertheless, the erroneous admission of evidence in violation of ER 404(b) is analyzed under the lesser standard for nonconstitutional error; that is, under the harmless error analysis. *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012); *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986). Evidentiary errors under ER 404(b) are harmless unless the error, within reasonable probabilities, affected the outcome of the trial.

This court must examine whether the erroneous admission of Charles Lloyd's testimony of Steven Smith's history of drug dealing unfairly prejudiced Smith. We rule the error to be harmless for at least two reasons. First, the trial court correctly admitted Smith's admission that he provided methamphetamine in exchange for the Hi-Point rifle, since the evidence explained the transaction and helped establish Smith's knowledge that the rifle was filched. Evidence of other drug sales would, therefore, unlikely alter the jury's view of Smith's character. Second, as reviewed below, the State presented strong admissible evidence that Steven Smith knew he possessed a stolen firearm.

D. Limiting Instruction

Normally the entry of ER 404(b) evidence requires that the trial court issue a limiting instruction to the jury. *State v. Russell*, 171 Wn.2d 118, 122-23, 249 P.3d 604 (2011). However, Smith never requested a limiting instruction, nor does he raise the

19

issue on appeal. For this reason, the trial court had no duty to give the instruction. *Russell*, 171 Wn.2d at 122-23.

*Sufficiency of the Evidence*

Finally, Steven Smith contends that insufficient evidence supports his conviction for possession of a stolen firearm. The standard of review for sufficiency of the evidence is substantial evidence. *State v. Castillo*, 144 Wn. App. 584, 588, 183 P.3d 355 (2008); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Rangel-Reyes*, 119 Wn. App. 494, 499, 81 P.3d 157 (2003). This court considers evidence "substantial" when the evidence is of a sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982); *State v. Valentine*, 75 Wn. App. 611, 620, 879 P.2d 313 (1994). This court rarely overturns a jury verdict, and will do so only when it is clear that no substantial evidence exists on which the jury could have based its decision. *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974); *Valentine*, 75 Wn. App. at 620.

This court reviews challenges to the sufficiency of the evidence in the light most favorable to the State. *State v. McPhee*, 156 Wn. App. 44, 62, 230 P.3d 284 (2010). The court's review examines whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999); *McPhee*, 156 Wn. App. at 62.

A defendant's claim of insufficiency of the evidence admits the truth

of the State's evidence and all inferences that can reasonably be drawn from it. We must draw all reasonable inferences in favor of the State and most strongly against the defendant. Both circumstantial evidence and direct evidence are equally reliable. Credibility determinations are for the trier of fact and are not subject to review.

*State v. McPhee*, 156 Wn. App. at 62 (citations omitted). This court defers to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Davis*, 176 Wn. App. 849, 861, 315 P.3d 1105 (2013), *review granted*, 179 Wn.2d 1014, 318 P.3d 280 (2014).

The jury found Steven Smith guilty of possession of a stolen firearm in violation of RCW 9A.56.310, which provides:

> (1) A person is guilty of possessing a stolen firearm if he or she possesses, carries, delivers, sells, or is in control of a stolen firearm.
> (2) This section applies regardless of the stolen firearm's value.
> (3) Each stolen firearm possessed under this section is a separate offense.
> (4) The definition of "possessing stolen property" and the defense allowed against the prosecution for possessing stolen property under RCW 9A.56.140 shall apply to the crime of possessing a stolen firearm.
> (5) As used in this section, "firearm" means any firearm as defined in RCW 9.41.010.
> (6) Possessing a stolen firearm is a class B felony.

In accordance with 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* § 77.13 (3d ed. 2008), the trial court instructed the jury:

> To convict the defendant of the crime of possessing a stolen firearm, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about February 5, 2013, the defendant possessed, carried, delivered, sold, or was in control of a stolen firearm, to wit: a Hi-

21

Point model 995 rifle, serial number B99280;

(2) That the defendant acted with knowledge that the firearm had been stolen;

(3) That the defendant withheld or appropriated the firearm to the use of someone other than the true owner or person entitled thereto; and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 169. The trial court further instructed the jury: "'Stolen' means obtained by theft, robbery or extortion." CP at 170.

Steven Smith challenges the sufficiency of the evidence that the Hi-Point rifle police found in his possession was a stolen firearm. We disagree. Prior to Smith's arrest, the Goldendale Police Department received a report of a stolen Hi-Point rifle. Smith purchased the Hi-Point rifle in Goldendale, the same city from which the same make and model of a Hi-Point rifle was stolen within the previous six weeks. Deputy Songer testified that, in his 13 years as a Klickitat County law enforcement officer and gun enthusiast, he had never before seen a Hi-Point rifle outside of a gun show or gun shop. When officers served the search warrant on Smith's residence, the Hi-Point rifle was the only firearm found outside Smith's residence. Officers discovered the Hi-Point rifle concealed in a hidden compartment in back of Smith's Durango. This evidence suggests that the Hi-Point rifle was distinct from the other six firearms recovered at Smith's

22

residence, which were not stolen. Smith admitted to Detective Kallio that he purchased the firearm for $50 and four grams of methamphetamine. The low purchase price and nature of the transaction intimates that the firearm was stolen. Smith bought only stolen firearms from the seller of the Hi-Point rifle. Smith told Charles Lloyd, when the Hi-Point rifle was concealed in his vehicle, that his vehicle contained stolen firearms. Smith and his associate Lloyd regularly possessed stolen firearms, and everyone from who they acquired firearms from "pretty much stole them."

## CONCLUSION

We affirm Steven Smith's conviction for knowing possession of a stolen firearm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____  
Fearing, J.

WE CONCUR:

_____  
Siddoway, C.J.

_____  
Brown, J.