# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69869-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RONALD LEE NEWMILLER, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 8, 2013 |

GROSSE, J. — A trial court's failure to give a correct limiting instruction for the jury's consideration of evidence of a defendant's prior acts admitted under ER 404(b) is error once the defendant requests such an instruction. But when, as here, in a prosecution for rape of a child, the jury has been permitted to consider evidence of a child molestation conviction for the purpose of showing lustful disposition and common scheme or plan, and we cannot say that within reasonable probabilities the outcome of his trial would have been materially affected had the proper instruction been given, that error does not require reversal. The facts, otherwise properly admitted, were graphic and detailed, and the trial court properly balanced the probative value against any unfair prejudice. We affirm the conviction.

## FACTS

The State charged Ronald Newmiller with one count of second degree molestation involving his daughter, L.N., alleged to have occurred in February 2010 when L.N. was thirteen years old. Newmiller pleaded guilty to that charge in April 2010. A few months later in July 2010, L.N. also revealed to authorities that Newmiller had sexually abused her multiple times before the February 2010 incident, beginning when

she was six years old. The State then charged him with two counts of first degree rape of a child, alleged to have occurred between August 2002 and August 2008.

Newmiller denied the allegations and the case proceeded to trial. Before trial, the State sought to admit evidence of Newmiller's conviction for the February 2010 incident. Over Newmiller's objection, the trial court admitted the evidence under ER 404(b) to show lustful disposition and a common scheme or plan.

At trial, L.N. described several incidents in which Newmiller digitally and orally penetrated her. According to L.N., it began when she was six years old and living in Port Orchard with Newmiller and his then girlfriend, Valerie Starrett. She testified that he began by first touching her vagina and then trying to digitally penetrate her. L.N. said he also put his tongue in her mouth and performed oral sex on her, but did not have her perform it on him because he said it did not arouse him.

L.N. also testified that when she was nine, she and Newmiller moved out of Starrett's house and into a duplex, with just the two of them living there. According to L.N., the touching became more frequent after the move and they had oral sex about once a month during the six months they lived at the duplex. L.N. described a specific incident that occurred during this time when she went into Newmiller's room because she could not sleep. She testified that she began kissing him and he kissed her back, that they had "slight intercourse but not completely," and that he touched her vagina with his fingers.

According to L.N., when she was younger Newmiller would remove her clothes, but as she got older, she removed them herself. She also said that she began initiating contact with Newmiller after she reached puberty when her hormones were "raging."

L.N. testified that she felt "50/50" about the contact, and that she began to learn "that in some ways it [was] kind of bad," but she did not want to tell anyone for fear of losing her father.

L.N. further testified about the February 2010 incident to which Newmiller had already pleaded guilty. She described it as their last sexual contact and testified that it happened when they were living with one of Newmiller's girlfriends. She said Newmiller came into her bed and became aggressive with her, telling her he missed her and wanted to make love to her. She told him she did not want to and he became angry and tried to pull off her underwear. She managed to keep him from pulling it off and he finally gave up and left the room.

L.N. then testified that Newmiller later came to her and said, "We have two choices now. You either tell someone and I go to jail, or I kill myself." She said nothing, he left and then a half an hour later returned and told her he had just tried to hang himself. L.N. testified that she was scared and confused and did not report anything to the police, but told her best friend, who then reported it to school authorities.

L.N. also testified that when she was interviewed about these allegations and was asked whether there were other incidents of abuse, she did not disclose the prior incidents. She testified that she did not report any abuse occurring before the February 2010 incident because she thought if she told everything, she would not be able to see her father again. It was not until after Newmiller pleaded guilty to the February 2010 incident and she was staying with her aunt for a few months that she finally told her aunt the whole story. After she told her aunt, she felt that she could also tell the prosecutor. L.N. testified that she finally came forward because she felt she was carrying such a

3

burden and was so depressed that she was cutting herself.

Douglas Dillard, the detective who investigated the February 2010 incident, testified to statements Newmiller made to him about the February 2010 incident. After receiving information from school authorities about L.N.'s disclosure, Dillard contacted Newmiller and advised him that his daughter had made some allegations involving him that Dillard wanted to talk to him about. Before Dillard said anything further about the allegations, Newmiller threw his arms up in the air and said, "Well, whatever my daughter said happened. Whatever she said happened." Newmiller then asked Dillard if he was going to be arrested and Dillard replied that he was.

Newmiller testified on his own behalf and denied the allegations. The trial court admitted a stipulation entered by both parties that Newmiller pleaded guilty to the February 2010 incident. Newmiller proposed the following jury instruction, which was given by the court:

> Evidence has been admitted in this case regarding the defendant's commission of a previous sex offense. The defendant is not on trial for any act, conduct, or offense not charged in this case.
>
> Evidence of a prior sex offense on its own is not sufficient to prove the defendant guilty of the crimes charged in this case. The State has the burden of proving beyond a reasonable doubt that the defendant committed each of the elements of the crimes charged.

The jury found Newmiller guilty as charged.

## ANALYSIS

Newmiller first contends that the trial court erred by admitting evidence of his prior sex offense because the court failed to balance relevant factors on the record and permitted the jury to convict based on propensity evidence. We disagree.

We review the trial court's determination to admit or exclude evidence for an

abuse of discretion.[1] Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts" is not admissible "to prove the character of a person in order to show action in conformity therewith." But the same evidence may be admissible "for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice."[2] The proponent of the evidence bears the burden of demonstrating a proper purpose.[3]

To admit evidence of prior misconduct, "the trial court must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged, and (3) weigh the probative value of the evidence against its prejudicial effect."[4]

Newmiller argues that the trial court failed to properly weigh the probative value against its prejudice effect. He contends that the trial court only considered the probative value of the evidence, found it to be highly probative, and admitted it on this basis without also considering its prejudicial effect, which was to provoke an emotional response rather than a rational decision. But as the State notes, the trial court did consider the prejudicial effect on the record: "Any of this type of evidence is prejudicial, but in this case it's not unfairly prejudicial given the strong probative value . . . ." This was sufficient to support its finding.[5] Because the jury already heard testimony from

---

[1] State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).
[2] Gresham, 173 Wn.2d at 420.
[3] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).
[4] State v. Lough, 125 Wn.2d 847, 853, 889 P.2d 487 (1995).
[5] See State v. Kennealy, 151 Wn. App. 861, 890, 214 P.3d 200 (2009) (no abuse of discretion in admitting ER 404(b) evidence in child sex case "because the danger of unfair prejudice does not substantially outweigh the probative value. . . ."); State v. Bennett, 36 Wn. App. 176, 672 P.2d 772 (1993) (trial court properly found prejudicial effect of ER 404(b) evidence outweighed by high probative value).

5

L.N. describing in graphic detail years of sexual abuse, it is difficult for us to say that evidence of an additional similar incident would in itself provoke an unduly prejudicial emotional response. Additionally, as the State notes, the unavailability of other means of proof is a factor that weighs against excluding prejudicial evidence here.[6] There was no other evidence to corroborate L.N.'s allegations and the fact that Newmiller had previously admitted to sexually abusing her as a teenager corroborates her testimony that he had been grooming her as a child to satisfy his sexual needs.

Newmiller further contends that the trial court erred by allowing the jury to consider the child molestation as propensity evidence. He notes that the court's instructions did not limit the jury's consideration of that evidence to the permissible purposes for which it was admitted. While we agree that the court erred by failing to give the correct limiting instruction, we nonetheless hold that such error was harmless.

"If evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request."[7] Such a limiting instruction "must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in conformity with that character."[8] The trial court has no duty to give an ER 404(b) limiting instruction sua sponte and the court may properly refuse to give the requested instruction if it is incorrect.[9]

---

[6] See State v. Johnson, 90 Wn. App. 54, 62, 950 P.2d 981 (1998).

[7] Gresham, 173 Wn.2d at 423.

[8] Gresham, 173 Wn.2d at 423-24.

[9] State v. Russell, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011); Crossen v. Skagit County, 100 Wn.2d 355, 360-61, 669 P.2d 1244 (1983).

Here, Newmiller did request an instruction, but an incorrect one. This instruction pertained to prior sex offenses admitted under RCW 10.58.090, which has since been held unconstitutional and is therefore not a valid basis for admitting such evidence.[10] The State argues that Newmiller invited error by requesting the incorrect instruction and was thereby barred from challenging it on appeal. But as the court held in Gresham, the trial court had a duty to give a correct instruction once Newmiller requested a limiting instruction and its failure to do so was error.[11] As the Gresham court explained:

> At least in the context of ER 404(b) limiting instructions, once a criminal defendant requests a limiting instruction, the trial court has a duty to correctly instruct the jury, notwithstanding defense counsel's failure to propose a correct instruction. This follows from our pronouncement in State v. Goebel, 36 Wn.2d 367, 379, 218 P.2d 300 (1950), that "the court should state to the jury whatever it determines is the purpose (or purposes) for which the evidence is admissible; and it should also be the court's duty to give the cautionary instruction that such is to be considered for no other purpose or purposes."[12]

Nonetheless, also as in Gresham, the failure to give an ER 404(b) limiting instruction here was harmless.[13] Such an error is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[14] Had a limiting instruction been given here and the jury accordingly been permitted to consider evidence of Newmiller's child molestation conviction only for the limited purpose of showing lustful disposition and common scheme or plan, we cannot say that within reasonable probabilities the outcome of his trial would have been materially affected.

---

[10] See Gresham. 173 Wn.2d at 424.

[11] Gresham, 173 Wn.2d at 424.

[12] 173 Wn.2d at 424.

[13] 173 Wn.2d at 425.

[14] Gresham, 173 Wn.2d at 425 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

First, while the instruction given to the jury did not instruct as to the limited purpose for which the molestation conviction was to be considered, it did emphasize that the evidence was contextual in nature and not to be given conclusive weight by stating that evidence of that conviction "on its own is not sufficient to prove the defendant guilty of the crimes charged in this case," and that Newmiller was "not on trial for any act, conduct, or offense not charged in this case."

Additionally, the prosecutor told the jury in closing argument that it could only consider that evidence for a limited purpose and not as propensity evidence:

> Evidence of that sex offense -- and we'll call it the February 2010 incident -- on its own is not sufficient to prove the defendant guilty of the two counts of rape that he's charged with. Why am I telling you that? Because you can't say, well, he did it on that day so he must have done it on this day and forget everything else. Don't do that. We're not asking you to do that. What we are asking you to do is to consider the lustful disposition he had. The time when she says no was the last time it happened. It wasn't the first and only; it was the last. It was the time she said, "No, no more, you're not doing it to me. . . .
>
> . . . There was such a pattern of grooming, preparation, planning, for this man to be able to get this young girl to want to seek comfort from her dad when she has nightmares by getting sexual contact. That takes a lot of planning and time and grooming. That's what this guy did. And you can consider that conviction, and you should consider that conviction as proof of a lustful disposition that he had for his daughter.

Defense counsel also reiterated to the jury in closing argument that "[y]ou cannot use that [prior conviction] to convict him."

Finally, had a limiting instruction been given that allowed the jury to consider the prior conviction as evidence of lustful disposition or common scheme or plan, it is difficult to say that the outcome would have been different. As the State notes, telling the jury that this evidence could only be used to show lustful disposition or common scheme or plan in fact highlights the prejudicial effect of such evidence and provides

8

further corroboration that the charged incidents were part of Newmiller's plan to groom L.N. and use her for his sexual pleasure. For this same reason, Newmiller's claim of ineffective assistance of counsel fails.[15]

Lastly, Newmiller contends that the trial court violated his right to a public trial by conducting in-camera proceedings without engaging in the analysis required by State v. Boneclub.[16] Newmiller claims that the trial court had a conference with counsel in chambers in which they discussed a concern that the jurors might have felt pressure to reach a verdict and decided to give a supplemental instruction to address this concern. Newmiller contends that the trial court violated his right to a public trial by holding this conference in chambers without first conducting an inquiry on the record and finding that closing the proceedings to the public was justified.

But as the State correctly notes, the record does not support his assertion that such a closed proceeding ever occurred. Newmiller's citation to the record is the court's statement on the record that this concern had been discussed and the parties agreed to give a supplemental instruction. But there is no indication that this discussion was conducted in chambers or was otherwise closed to the public. Rather, the court simply stated:

> A couple things, I want to make a record. Yesterday afternoon there was concern, as the day was winding down, that the jurors may have felt some pressure to reach a verdict, and so I consulted with the lawyers and gave a supplemental instruction, by their agreement, that indicated in my instruction, "At the end of the trial today, I indicated the time we would conclude today. I did not mean to suggest that you should reach your verdict today; only that if you haven't reached your verdict today,

---

[15] Newmiller contends that he was denied effective assistance of counsel by his attorney's failure to propose a proper limiting instruction for the jury's consideration of the prior sex offense.

[16] 128 Wn.2d 254, 906 P.2d 325 (1995).

deliberations would continue to the next day. We originally thought the next day would be Monday, Monday is still available for your deliberations.

However, since we concluded the evidentiary portion of the trial earlier than thought, you may wish to continue deliberations tomorrow, Thursday. I will leave it to your discretion. Just inform the bailiff of your choice."

So that was the agreement of counsel; is that correct from the state's perspective?

Newmiller's claim of a public trial right violation is therefore without basis.

We affirm.

WE CONCUR: