# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85336-8-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| AEURLIOUS E. DRAYTON, | |
| Appellant. | |

FELDMAN, J. — Aeurlious Drayton appeals from the judgment and sentence entered on a jury's verdict convicting him of attempted human trafficking in the second degree, rape of a child in the second degree, and promoting commercial sexual abuse of a minor. We remand to strike the victim penalty assessment (VPA) and affirm in all other respects.

I

On the evening of January 19, 2022, 33-year-old Drayton encountered 13-year-old J.M. outside a restaurant in Tacoma, Washington. Drayton drove his vehicle into the parking lot, rolled down a window, and asked J.M. if she needed a ride. J.M. said yes and got into Drayton's car. When Drayton asked J.M. her age and whether she was in school, J.M. said she was 13 years old and attended a middle school.

Drayton began driving toward Seattle. During the drive, Drayton asked J.M. if she was "interested in getting money" through a "side hustle" and told her "it's legal for 13-year-olds to prostitute in California." Drayton then drove to his house to retrieve more revealing clothing for J.M., including a tank top, basketball shorts, and a thin robe. After retrieving this clothing, Drayton parked the vehicle on a secluded street and smoked cannabis with J.M. While they were parked, Drayton instructed J.M. to take off her clothes, which she did. Drayton then penetrated J.M.'s vagina with his finger, performed oral sex on her, told her to perform oral sex on him, which she did, and penetrated her vagina with his penis.

Afterwards, Drayton drove J.M. to an area near Aurora Avenue North in Seattle and explained various "rules" to J.M. for "getting him money by performing sexual acts," including which sexual acts to perform, what prices to charge for certain sexual acts, how to avoid other "pimps," which types of customers to solicit, and how to evade law enforcement. Drayton also gave J.M. items to assist her in performing the sexual acts, including the revealing clothing he obtained from his house, cash, brass knuckles, an umbrella, a condom, and a phone containing his contact information saved as the "Great Father." Lastly, Drayton instructed J.M. to tell customers that her name was Brianna and she was 21 years old. Drayton eventually dropped off J.M. on a street near Aurora Avenue North and told her to meet him at a nearby restaurant within an hour to give him the money she earned from performing sexual acts.

After being dropped off, J.M. walked to an apartment complex where she encountered police officers responding to an unrelated matter. J.M. handed

officers the items Drayton gave her and provided a description of Drayton and his vehicle. Shortly thereafter, police located and arrested Drayton several blocks away from the apartment complex, and they subsequently discovered J.M.'s belongings inside Drayton's vehicle. Meanwhile, J.M. was transported to a hospital where a sexual assault nurse examiner collected a vaginal swab from her. A DNA analyst later determined that semen recovered on this swab matched Drayton's DNA profile.

The State charged Drayton with three counts: (1) attempted human trafficking in the second degree, (2) rape of a child in the second degree, and (3) promoting commercial sexual abuse of a minor. A jury found him guilty as charged. Drayton was sentenced to a determinate sentence of 120 months on count 1, an indeterminate sentence of 280 months to life on count 2, and a determinate sentence of 318 months on count 3, all to run concurrently. Drayton appeals.

II

A.    Ineffective assistance of counsel

Drayton first argues his trial counsel rendered ineffective assistance of counsel by telling jurors during his opening statement that Drayton would testify. We disagree.

A defendant alleging ineffective assistance of counsel must satisfy the two-prong *Strickland* test by showing that (a) "counsel's performance was deficient" and (b) "the defendant was prejudiced by the deficient performance." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To

satisfy the deficiency prong, the defendant must establish that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). To overcome the strong presumption that counsel's performance was reasonable, the defendant must show that no legitimate trial tactic can explain counsel's performance. *Id.* at 539. Additionally, on direct appeal, we determine counsel's competency "based on the record established in the proceedings below." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Our Supreme Court's opinion in *In re Personal Restraint of Benn*, 134 Wn.2d 868, 952 P.2d 116 (1998), is instructive on this issue. In that case, Benn's trial counsel conceded during opening statements in a murder trial that Benn had killed the victims and told the jury to instead focus on whether Benn acted with premeditation. *Id.* at 879, 897. Although Benn initially planned to testify, he subsequently "change[d] his mind" and chose not to testify after the State presented its case. *Id.* at 895, 898. Following his convictions, Benn filed a personal restraint petition alleging his counsel was ineffective because "it is ineffective per se to fail to call a promised witness, such as himself." *Id.* at 897. Our Supreme Court rejected Benn's argument and stated, "'[A]ssuming counsel does not know at the time of the opening statement that he will not produce the promised evidence, an informed change of strategy in the midst of trial is 'virtually unchallengeable.'" *Id.* at 898 (quoting *Turner v. Williams*, 35 F.3d 872, 904 (4th Cir. 1994) (quoting *Strickland*, 466 U.S. at 690)). The court concluded, "Since counsel did not know their client was going to change his mind about testifying and

are not responsible for his decision, the defendant cannot challenge their mid-trial change of strategy." *Id.*

*Benn* is directly on point and disposes of Drayton's argument. The record indicates that at the time Drayton's counsel told jurors during his opening statement that Drayton would testify, Drayton indeed planned on testifying. When the trial court asked defense counsel after the State had rested whether Drayton would testify, Drayton himself responded, "Oh, I'm going to testify." And during a hearing on a post-trial motion filed by Drayton, he reiterated to the court that he "wanted to testify" at trial but changed his mind after conferring with defense counsel. Under *Benn*, Drayton cannot establish ineffective assistance of counsel merely because he subsequently chose not to testify. Although defense counsel's statements may appear unwise given Drayton's subsequent decision, we may not rely on hindsight in assessing the reasonableness of defense counsel's performance. *See State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) ("'[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'") (quoting *Strickland*, 466 U.S. at 689). On this record, defense counsel's performance did not fall below an objective standard of reasonableness in light of all the circumstances.

The federal authorities upon which Drayton relies in support of his ineffective assistance of counsel argument are not persuasive. In *Anderson v. Butler*, 858 F.2d 16, 18-19 (1st Cir. 1988), the First Circuit held that defense

counsel was ineffective for failing to produce expert testimony after promising to do so in his opening statement.  Later, in *Ouber v. Guarino*, 293 F.3d 19, 28-29 (1st Cir. 2002), the First Circuit followed *Anderson* and held that defense counsel was ineffective for promising during his opening statement that the defendant would testify but not calling her as a witness later in the trial.  Drayton's reliance on these cases is misplaced because our Supreme Court's opinion in *Benn*—which is binding on our court—expressly declined to follow *Anderson* and instead held, consistent with other federal cases, that counsel's failure to present promised evidence does not necessarily constitute defective performance.  *See Benn*, 134 Wn.2d at 898 (citing *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993); *Turner*, 35 F.3d at 904).

Anderson* and *Ouber* are also factually distinguishable.  In *Anderson*, the promised witness was an expert witness whom defense counsel could compel to testify.  858 F.2d at 18-19.  In Drayton's case, the promised witness was the defendant, who ultimately makes the decision whether to testify and can elect not to do so.  *See Benn*, 134 Wn.2d at 898.  And in *Ouber*, counsel knew the defendant's testimony would likely have been persuasive to jurors given the defendant had previously testified in two trials on the same charge that both resulted in hung juries.  293 F.3d at 29.  In contrast, Drayton's counsel did not have the benefit of knowing how the jury would react to Drayton's testimony.

In sum, we conclude Drayton has not established deficient performance under the first *Strickland* prong.  Because Drayton fails to demonstrate deficient performance, we need not address whether he has shown prejudice under the

second *Strickland* prong. *See State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996) ("If either part of the test is not satisfied, the inquiry need go no further.").

B. Right to present a defense

Drayton claims the trial court violated his right to present a defense to the charge of promoting commercial sexual abuse of a minor by "instructing jurors on an affirmative defense over [his] objection." We disagree.

"Implicit in the Sixth Amendment is the criminal defendant's right to control his defense." *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). "'Instructing the jury on an affirmative defense over the defendant's objection violates the Sixth Amendment by interfering with the defendant's autonomy to present a defense.'" *Id.* at 492 (quoting *State v. Coristine*, 177 Wn.2d 370, 375, 300 P.3d 400 (2013)). But as controlling precedent makes clear, a defendant's right to present a defense is not violated where the defendant acquiesces to the instruction. *See Coristine*, 177 Wn.2d at 377 ("*[U]nless the accused has acquiesced* . . . , the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.'") (quoting *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)) (emphasis added). "Whether a Sixth Amendment right has been abridged presents a legal question that is reviewed de novo." *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019).

During the discussion of proposed jury instructions prior to closing arguments, the prosecutor proposed the following instruction:

> A person commits the crime of Promoting Commercial Sexual Abuse of a Minor if he or she knowingly advances the commercial sexual abuse of a minor.
>
> It is not a defense that the defendant did not know the minor's age. It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper and did not rely solely on the oral allegations or apparent age of the minor.
>
> Consent of a minor to the sexual conduct does not constitute a defense.

The prosecutor also stated that if the trial court rejected the proposed instruction then he would move to "preclude [defense] Counsel from making any argument that the Defendant did not know the minor's age or believed her to be older than she was, because . . . those types of arguments are in direct violation of the law" and "the jury won't know that unless they are instructed . . . of the law."

In response to the proposed instruction and the prosecutor's argument, defense counsel contended he should be allowed to argue, without this proposed instruction, that J.M.'s testimony that she told Drayton she was 13 years old was "very unreliable" and that "[i]t's more likely than not that [J.M] told [Drayton] that she was, in fact, 18 years old and wanted to go for a ride and have some fun." Defense counsel also noted the second paragraph in the proposed instruction, which contains the affirmative defense language at issue, deviated from the pattern jury instructions. The prosecutor replied he would not object to defense counsel's argument if the court gave the proposed instruction, but would object if the court did not give it. Defense counsel then stated, "I understand logically the State's

position and . . . am concerned about cutting whole cloth and creating an instruction that does not exist in the WPICs in its entirety."

Following this exchange, the trial court told defense counsel it would "really have trouble letting you make that argument" without the proposed instruction because "the jury would hear you arguing that the Defendant didn't know how old [J.M.] was or believed her to be not a minor, but wouldn't be instructed that under RCW [9.68A.110(3)] it is not a defense that the Defendant did not know the alleged victim's age," which "would be confusing to the jury." Defense counsel then acquiesced to the State's proposed instruction, stating, "I think on balance the State can have their instruction. We keep the WPIC. They can have . . . the knowledge component with age . . . in a separate instruction." As to the third paragraph, defense counsel similarly agreed, "[I]f they [the State] want to keep the instruction in and it gives me more range to argue my theory of the case, then that's fine."

The next day, the trial court finalized the jury instructions and separated the prosecutor's proposed instruction into two final instructions, with the first paragraph becoming instruction 21 and the second and third paragraphs becoming instruction 28. When the trial court asked if the parties took exception to any of the instructions, defense counsel replied "we would adopt these instructions pursuant to our prior discussions and negotiations on the formation of them" and "we accept the instructions." After the parties agreed to these instructions, defense counsel stated he "would just note exception" to instruction 28 "based on the fact that it's

not in the WPIC," but added, "I understand why it's being offered." Instruction 28 was then given to the jury without further objection.

On this record, the trial court did not violate Drayton's right to a defense by giving the affirmative defense instruction as stated in instruction 28 over Drayton's objection because Drayton acquiesced to its substantive language. Drayton was presented with a choice between (a) proceeding without the instruction and urging the jury not to believe J.M.'s testimony that she told Drayton she was only 13 years old, to which the State would object, and (b) agreeing to the instruction and making this argument to the jury without objection from the State. Drayton chose the latter and proceeded to argue, without objection from the State, that the jury should acquit Drayton because it is "implausible" that J.M. told him she was 13 years old. Having acquiesced to the inclusion of the affirmative defense instruction, Drayton cannot show, as he must, that the trial court instructed the jury over his objection.

Given Drayton's acquiescence to instruction 28, the cases upon which he relies are inapposite because they involved defendants who clearly objected to an affirmative defense instruction on substantive grounds. *See Lynch*, 178 Wn.2d at 490 (defendant in an indecent liberties and second degree rape trial "objected to the consent instruction" because "he did not want to bear the burden of proving consent"); *Coristine*, 177 Wn.2d at 374 (defendant in second degree rape trial objected to instruction regarding whether he reasonably believed the victim was mentally incapacitated or physically helpless because his argument was "simply that the State failed to prove [the victim] was incapacitated"); *State v. McSorley*, 128 Wn. App. 598, 603, 116 P.3d 431 (2005) (defendant in child luring trial "most

strenuously" objected to affirmative defense instruction regarding the reasonableness of his actions and his intent because it would "impos[e] on him the burden of proving facts not in issue"); *see also State v. Jones*, 99 Wn.2d 735, 737-38, 664 P.2d 1216 (1983) (trial court erroneously entered a plea of not guilty by reason of insanity for the defendant "over [his counsel's] strenuous objections"). Unlike these defendants, Drayton acquiesced to instruction 28 so that he could argue his theory of the case to the jury without objection from the State.

Although Drayton subsequently took exception to instruction 28 after agreeing to its inclusion, this exception was solely "based on the fact that it's not in the WPIC," rather than based on the substantive language in the instruction. Drayton does not explain how his objection to the *form* of instruction 28 was sufficient to revive his earlier objection to its *substance*, which he had abandoned. Nor does he argue on appeal that a trial court deprives a defendant of their right to present a defense by giving a non-pattern jury instruction.[1] Accordingly, the trial court did not violate Drayton's right to present a defense by giving instruction 28.

C.    Affirmative defense instruction

Drayton also contends the trial court erred in refusing to give his proposed affirmative defense instruction to the charge of rape of a child in the second degree. We disagree.

"A defendant is entitled to a jury instruction that is supported by substantial evidence in the record." *State v. O'Dell*, 183 Wn.2d 680, 687, 358 P.3d 359 (2015).

---

[1] To the contrary, we have recognized that "deviation from the language of the Washington Pattern Jury Instructions does not necessarily constitute error." *Humes v. Fritz Cos.*, 125 Wn. App. 477, 499, 105 P.3d 1000 (2005). That is especially true here because instruction 28 recites the language of RCW 9.68A.101(4) and .110(3).

In making this evidentiary determination, "the court must view the evidence in the light most favorable to the defendant." *Id.* at 687-88. We review a trial court's ruling that an affirmative defense instruction is unsupported by evidence for an abuse of discretion. *State v. Butler*, 200 Wn.2d 695, 713, 521 P.3d 931 (2022). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *State v. Ferguson*, 25 Wn. App. 2d 727, 735, 524 P.3d 1080 (2023).

The State prosecuted Drayton under RCW 9A.44.076(1), which states, "[a] person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." In such prosecutions, RCW 9A.44.030(2) provides that "it is no defense that the perpetrator did not know the victim's age, or that the perpetrator believed the victim to be older, as the case may be." The statute creates one exception to the prohibition on this argument, namely that "it is a defense which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed the alleged victim" was at least fourteen years old or was less than thirty-six months younger than the defendant "based upon declarations as to age by the alleged victim." *Id.*; RCW 9A.44.030(3)(b). A "declaration" for purposes of RCW 9A.44.030(2) refers to "some kind of explicit assertion from the victim," as opposed to the victim's "generalized, nonassertive manifestations of appearance, behavior and demeanor." *State v. Bennett*, 36 Wn. App. 176, 181-82, 672 P.2d 772 (1983); *see also O'Dell*, 183 Wn.2d at 688 (victim

did not make a declaration by stating, in response to defendant's comment that she appeared too young to be drinking, "I get that a lot").

Applying this statutory framework, the trial court did not abuse its discretion in rejecting Drayton's proposed affirmative defense instruction based on RCW 9A.44.030(2) because there is no evidence J.M. made a declaration that she was at least 14 years old or less than 36 months younger than Drayton. J.M. testified that she told Drayton she was 13 years old shortly after he picked her up in his vehicle. Drayton, who was 33 years old at the time, acknowledged J.M.'s age by telling her "it's legal for 13-year-olds to prostitute in California." There is no evidence in the record that J.M. told anyone she was at least 14 years old during the events in question. Viewing this evidence in the light most favorable to Drayton, there is insufficient evidence to support the affirmative defense contained in RCW 9A.44.030(2).

Drayton argues J.M. made a declaration for purposes of RCW 9A.44.030(2) because she "recant[ed] allegations that Mr. Drayton pressured her to get in his vehicle, that he falsely promised to take her home, and that she never wanted to go to Seattle." These discrepancies in J.M.'s story, Drayton argues, "supported an argument that J.M. also lied when testifying that the age she provided him was thirteen." This argument erroneously conflates J.M.'s statement to Drayton with her recanted statements to law enforcement. The affirmative defense is only available where the alleged victim's declaration relates "to age" and causes the defendant to "reasonably believe" the alleged victim is older than their true age before the defendant commits the offense. RCW 9A.44.030(2). But none of J.M.'s

- 13 -

statements to law enforcement that she would later recant related to her age. Nor could these statements have caused Drayton to reasonably believe J.M. was at least 14 years old before he committed the offense, given that J.M. made these statements outside of Drayton's presence after he already had sexual intercourse with her. Accordingly, the trial court did not abuse its discretion in denying Drayton's proposed affirmative defense instruction regarding rape of a child in the second degree.

D.    Sufficiency of the evidence

In his statement of additional grounds (SAG),[2] Drayton argues the State presented insufficient evidence to support his conviction for attempted human trafficking in the second degree because "there was no force, fraud or coercion." Similarly, Drayton contends the State presented insufficient evidence to support his conviction for promoting commercial sexual abuse of a minor because J.M. "was free to walk away at any time." To determine whether sufficient evidence supports a jury's verdict, we must assess "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).

Both of Drayton's arguments fail because force, fraud, or coercion and lack of consent are not elements of the respective crimes. The trafficking statute provides, "If the victim of any offense identified in this section is a minor, force, fraud, or coercion are not necessary elements of an offense and consent to the . . .

---

[2] Drayton also filed a pro se personal restraint petition (PRP) concurrently with his SAG. Drayton subsequently filed a motion to withdraw his PRP, and a commissioner of this court granted that motion. Therefore, we do not address Drayton's PRP.

commercial sex act does not constitute a defense." RCW 9A.40.100(5). Likewise, the promoting commercial sexual abuse of a minor statute omits the victim's lack of consent as an element of the crime. *See* RCW 9.68A.101. Instead, the statute states, "Consent of a minor to the . . . sexual conduct does not constitute a defense to any offense listed in this section." RCW 9.68A.101(4). Accordingly, sufficient evidence supports Drayton's convictions on counts 1 and 3.

E.      Double jeopardy

Drayton further argues his convictions for attempted human trafficking in the second degree and promoting commercial sexual abuse of a minor violate double jeopardy. We disagree.

The double jeopardy provisions of our federal and state constitutions bar multiple punishments for the same offense. *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010) (citing U.S. Const. amend. V; Wash. Const. art. I, sec. 9). We review double jeopardy claims de novo. *Arndt*, 194 Wn.2d at 815. Where, as here, a defendant's act supports charges under two criminal statutes, we "must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *State v. Nysta*, 168 Wn. App. 30, 44, 275 P.3d 1162 (2012). "If the legislature intended that cumulative punishments can be imposed for the crimes, double jeopardy is not offended." *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007).

To determine whether the legislature intended to impose cumulative punishments, we follow four analytical steps: "(1) consideration of any express or implicit legislative intent, (2) application of the *Blockburger*, or 'same evidence,'

test, (3) application of the 'merger doctrine,' and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense." *Arndt*, 194 Wn.2d at 816 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)). "If legislative intent to allow separate punishments can be found in any of the four steps of the analysis, then there is no double jeopardy violation." *State v. Heng*, 22 Wn. App. 2d 717, 732, 512 P.3d 942 (2022), *aff'd*, 2 Wn.3d 384, 539 P.3d 13 (2023).

Drayton addresses only the second analytical step. Under the controlling *Blockburger* test, "double jeopardy principles are violated if the defendant is convicted of offenses that are identical in fact and in law." *Borrero*, 161 Wn.2d at 537. We consider the elements of the crimes "as charged and proved, not merely as the level of an abstract articulation of the elements." *State v. Freeman*, 153 Wn.2d 765, 777, 108 P.3d 753 (2005). In other words, we determine "'whether the *evidence required* to support the conviction for [one offense] would have been sufficient to warrant a conviction upon the other.'" *State v. Lee*, 12 Wn. App. 2d 378, 398-99, 460 P.3d 701 (2020) (quoting *Nysta*, 168 Wn. App. at 47).

Drayton's double jeopardy argument is similar to the argument that the court rejected in *State v. Clark*, 170 Wn. App. 166, 189, 283 P.3d 1116 (2012). There, Clark was convicted of human trafficking in the second degree where the State alleged he "recruited, harbored, transported, provided, or obtained by any means" an adult victim "knowing that force, fraud, or coercion would be used to cause [the victim] to engage in forced labor or involuntary servitude." *Id.*[3] Clark was also

---

[3] The relevant statute for this offense provided that a person is guilty of trafficking in the second degree when such person "[r]ecruits, harbors, transports, provides, or obtains by any means

convicted of promoting prostitution in the first degree where the State alleged he "knowingly advanced prostitution by compelling [the victim] by threat or force to engage in prostitution." *Id.* at 190.[4]

On appeal, we concluded these offenses were not the same in law because the promoting prostitution statute required "proof that the defendant actually used force to compel a person to engage in prostitution," whereas the human trafficking statute required proof "the defendant knew that force, fraud, or coercion '*will be used*' in the future to cause another person to engage in forced labor or involuntary servitude by engaging in prostitution." *Id.* at 190-91 (citing former RCW 9A.88.070(1); quoting former RCW 9A.40.100(2)(a)(i)). We also noted that proof that the defendant recruited, harbored, transported, provided, or obtained by any means the victim was required to convict the defendant of human trafficking but not promoting prostitution. *Id.* at 191 n.12. We concluded the offenses were not the same in fact because the prosecutor was required to prove a different mens rea for each offense. As the prosecutor in *Clark* explained in closing argument, the jury had to find Clark knew that force was "going to be used" to convict him of human trafficking, whereas it had to find he knowingly used such force to convict him of promoting prostitution. *Id.* at 191. Therefore, Clark's convictions did not violate double jeopardy. *Id.* at 191-92.

---

another person knowing that force, fraud, or coercion as defined in RCW 9A.36.070 will be used to cause the person to engage in forced labor or involuntary servitude." *Clark,* 170 Wn. App. at 189 (quoting former RCW 9A.40.100(2)(a)(i)).

[4] The relevant statute for this offense provided, "A person is guilty of promoting prostitution in the first degree if he or she knowingly advances prostitution by compelling a person by threat or force to engage in prostitution or profits from prostitution which results from such threat or force." *Id.*at 190 (quoting former RCW 9A.88.070(1)). The *Clark* court also noted, "Under RCW 9A.88.060(1), a person 'advances prostitution' if he causes a person to commit or engage in prostitution." *Id.* at 190 n.7.

For similar reasons, Drayton's convictions for attempted human trafficking in the second degree and promoting commercial sexual abuse of a minor do not violate double jeopardy. The State alleged Drayton committed attempted human trafficking in the second degree by "knowingly attempt[ing] to recruit, harbor, transport, or provide[] by any means another person, to-wit: J.M. . . . who had not attained the age of eighteen years and was caused to engage in a commercial sex act."[5] The State further alleged Drayton committed promoting commercial sexual abuse of a minor by "knowingly advanc[ing] the commercial sexual abuse of a minor to-wit: J.M."[6] As in *Clark*, these offenses are legally distinct. To prove attempted human trafficking the State had to show that Drayton took a substantial step toward recruiting, harboring, transporting, or providing J.M. knowing that J.M. would be caused to engage in a commercial sex act, whereas to prove promoting commercial sexual abuse of a minor the State had to show that Drayton knowingly advanced such abuse by presently instituting, aiding, or facilitating the abuse. Each offense includes an element not included in the other.

---

[5] This language from the charging instrument aligns with the statutory language of the trafficking statute, which provides in relevant part that a person is guilty of human trafficking in the second degree when he or she "[r]ecruits, harbors, transports, transfers, provides, obtains, buys, purchases, or receives by any means another person knowing, or in reckless disregard of the fact . . . that the person has not attained the age of eighteen years and is caused to engage in . . . a commercial sex act." RCW 9A.40.100(3)(a). The State charged Drayton with an attempted crime rather than a completed crime because J.M. did not engage in a commercial sex act. Thus, the State had to prove that, with intent to commit human trafficking in the second degree, Drayton took a "substantial step toward commission of that crime." RCW 9A.28.020(1).

[6] This language from the charging instrument aligns with the promoting commercial sexual abuse of a minor statute, which provides that a person is guilty of this crime if they "knowingly advance[] commercial sexual abuse . . . of a minor," which in turn means to "engage[] in any . . . conduct designed to institute, aid, cause, assist, or facilitate an act or enterprise of commercial sexual abuse of a minor." RCW 9.68A.101(1), (3)(a). A person is guilty of commercial sexual abuse of a minor if he or she "provides anything of value to a minor or a third person as compensation for a minor having engaged in sexual conduct with him or her," "provides or agrees to provide anything of value to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him or her," or "solicits, offers, or requests to engage in sexual conduct with a minor in return for anything of value." RCW 9.68A.100(1).

These offenses also are factually distinguishable based on the facts proven at trial. J.M. testified that Drayton invited her into his vehicle and drove her from Tacoma to Seattle. J.M. also testified that Drayton discussed prostitution during this drive by asking her if she was "interested in getting money" through a "side hustle" and telling her "it's legal for 13-year-olds to prostitute in California." Based on this evidence that Drayton recruited, harbored, transported, and/or provided J.M. for eventual engagement in commercial sex acts, the jury could have found Drayton guilty of attempted human trafficking in the second degree. But this testimony alone was not sufficient for the jury to find Drayton guilty of promoting commercial sexual abuse of J.M. Regarding that offense, J.M. testified that Drayton explained the rules for engaging in commercial sex acts, gave her items to help her engage in such acts, dropped her off in an area described by multiple witnesses as a high prostitution area, and told her when and where to meet him later to give him the money she earned by performing such acts. While this evidence was sufficient for the jury to find that Drayton advanced commercial sexual abuse of J.M. (as defined in footnote 6 above), it would have been insufficient to find that he attempted to traffic J.M. As the prosecutor emphasized in closing argument, the offenses "were committed through different means and at different stages of the timeline." Thus, Drayton's convictions are both legally and factually distinct under the *Blockburger* test.

Notwithstanding the dissimilarities between these offenses, Drayton argues his convictions offend double jeopardy because "[n]othing in the instructions or prosecutor's arguments foreclosed jurors from basing both convictions on the

same act." We previously rejected a similar argument in *Nysta*, where a defendant argued his convictions for second degree rape and felony harassment violated double jeopardy because evidence of the defendant's threat to kill the victim was "available" to prove both counts but the jury was not asked to specify what evidence they relied upon to support each conviction. 168 Wn. App. at 43, 49. We noted, "'If each [element] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* at 45 (internal quotation marks omitted) (quoting *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)). Given evidence that Nysta used other forms of physical force to compel the rape, his convictions did not violate double jeopardy because "[t]he death threat was *available* to support the second degree rape, but it was not *required*." *Id.* Similarly here, despite overlap in the evidence available to establish attempted human trafficking in the second degree and promoting commercial sexual abuse of a minor, each offense ultimately required proof of a fact which the other did not.

The double jeopardy cases upon which Drayton relies are inapposite. In *State v. Kier*, 164 Wn.2d 798, 813-14, 194 P.3d 212 (2008), the court merged a second degree assault conviction into a first degree robbery conviction because it was "unclear from the jury's verdict whether the assault was used to elevate the robbery to first degree." Drayton's reliance on *Kier* is misplaced because his convictions for attempted human trafficking in the second degree and promoting commercial sexual abuse of a minor do not implicate the merger doctrine, which

- 20 -

No. 85336-8-I

applies only where "the degree of one offense is elevated by conduct constituting a separate offense." *Id*. at 804. That did not occur here.

Drayton's reliance on *State v. Adel*, 136 Wn.2d 629, 965 P.2d 1072 (1998), is similarly misplaced. There, the court held that multiple convictions for cannabis possession violated double jeopardy under the "unit of prosecution" test, which we apply where a defendant is convicted of violating one statute multiple times. *Id.* at 634-35. The *Adel* court noted this test is designed to prevent prosecutors from "arbitrarily . . . divid[ing] up ongoing criminal conduct into separate time periods to support separate charges." *Id.* at 635 (citing *In re Snow*, 120 U.S. 274, 282, 7 S. Ct. 556, 30 L. Ed. 658 (1887)). In contrast, Drayton was convicted of violating several statutes, which, as the *Adel* court recognized, requires us to apply the *Blockburger* test instead of the unit of prosecution test. *See id.* at 633. Thus, the concerns about arbitrary temporal distinctions between charges that were present in *Adel* are not present in Drayton's case. *See Freeman*, 153 Wn.2d at 776 ("the mere fact that the same *conduct* is used to prove each crime is not dispositive" under the *Blockburger* test).

In sum, because Drayton's convictions for attempted human trafficking in the second degree and promoting commercial sexual abuse of a minor are legally and factually distinct under the *Blockburger* test, his double jeopardy argument fails on this basis.

F.    VPA

Lastly, Drayton argues remand is necessary to strike the $500 VPA from his judgment and sentence because recent amendments to RCW 7.68.035 prohibit

- 21 -

the imposition of this fee against defendants who, like Drayton, are indigent at the time of sentencing.  The State agrees the VPA should be stricken due to Drayton's indigency.  We accept the State's concession and remand to the trial court to strike the VPA.  *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) ("Although [the] amendment [to RCW 7.68.035] will take effect after Ellis's resentencing, it applies to Ellis because this case is on direct appeal.").

In all other respects, we affirm.

Feldman, J.

WE CONCUR:

Díaz, J.

Mann, J.